**Ex parte WHITE.**

**Habeas Corpus No. 300.**

District Court, Hawaii.
May 2, 1944.

Fred Patterson and E. J. Botts, both of Honolulu, T. H., for petitioner.

G. D. Crozier, U. S. Dist. Atty., and Edward A. Towse, Asst. U .S. Dist. Atty., both of Honolulu, T. H., Edward J. Ennis, Sp. Asst. to Atty. Gen. of the United States, and Lieut. Col. William J. Hughes, Jr., Judge Advocate General's Department, both of Washington, D. C., and Lieut. Col. Eugene V. Slattery, Office of the Military Governor, of Honolulu, T. H., for respondent, William F. Steer, Colonel, Infantry, U. S. Army, Provost Marshal, Central Pacific Area.

McLAUGHLIN, District Judge.

In this habeas corpus proceeding the pertinent facts are as follows:

### I. Historical Facts.

(a) On the afternoon of December 7, 1941, the Governor of Hawaii, J. B. Poindexter, invoked Section 67 of the Hawaiian Organic Act [1] and by proclamation placed the Territory under martial law; suspended the privilege of the writ of habeas corpus; and delegated to the Commanding General of the Hawaiian Department of the United States Army not only all of his powers as Governor but also all of the

"powers normally exercised by judicial officers * * * of this territory * * * *" "* * * during the present emergency and until the danger of invasion is removed." [2]

(b) By radio the Governor of Hawaii on December 7, 1941, notified the President of the United States simply that he had placed the Territory under martial law and suspended the writ.[3] The President's approval was requested and it was granted by radio on December 8, 1941.[4] Not until 1943 was the text of the Governor's December 7 proclamation furnished Washington officials, and it is still doubtful if it has yet been seen by the President. (See Respondent's Exhibits 2—1, 2—2, 2—3, 2—4.)

(c) On December 7, 1941, the Commanding General, Walter C. Short, referring specifically to Governor Poindexter's proclamation of the same date, himself issued a proclamation [5] notifying the people of Hawaii that he had assumed the position of "Military Governor of Hawaii" and had taken over the government of Hawaii.

(d) Likewise on December 7 the self-styled Military Governor of Hawaii issued General Orders No. 4 [6] by which he had set up a system of military courts to try civilians for violations of the laws of the United States, the laws of the Territory, and "rules, regulations, orders, or policies" of the military authorities. The procedure prescribed for these military courts was that of special and summary courts-martial.

(e) The courts of the Territory were closed as of December 8 by order of the military.[7]

(f) On December 16, 1941, by General Orders No. 29 the complete closing of the courts because of the existence of martial law was partly relaxed.[8] The relaxation was worded to include the United States District Court, though it has never been closed since its organization in 1900. The relaxation affected only civil matters.

(g) On January 27, 1942, the Military Governor by General Orders No. 57 [9] modified further his grip upon the "courts

---

[1] 31 Stat. 141, April 30, 1900, 48 U.S. C.A. § 532.
[2] Appendix I.
[3] Appendix II.
[4] Appendix III.

[5] Appendix IV.
[6] Appendix V.
[7] Appendix VI.
[8] Appendix VII.
[9] Appendix VIII.

in the Territory." By this order it was stated that the courts were restored to their full jurisdiction "as agents of the Military Governor." On the criminal side, however, the courts could not under the order summons a grand jury; on the criminal or civil side they could not grant a jury trial, or at any time grant a writ of habeas corpus.

(h) By appropriate military orders the Military Governor appointed army officers as judges of his provost courts. In August 1942 Major S. E. Murrell, J. A. G. D., was judge of Honolulu Provost Court No. 3 by reason of General Orders No. 122 of the Military Governor.[10]

(i) Apparently upon the theory that Governor Poindexter delegated the powers described in his December 7 proclamation to the office of Commanding General, General Short transferred to General Emmons his powers as Military Governor of Hawaii on December 17, 1941,[11] and on the same date General Emmons assued the position of Military Governor of Hawaii.[12] Accordingly, in August 1942 General Emmons was acting with respect to the civilian population of Hawaii as "Military Governor of Hawaii."

## II. Facts of White Case.

On August 20, 1942, the petitioner, Harry E. White, a citizen of the United States and a civilian unconnected with the armed forces of the United States, who had been regularly engaged in the brokerage and investment business in Honolulu, was arrested by representatives of the Provost Marshal of Honolulu. White was placed by the Marshal in the jail of the City and County of Honolulu until August 22, on which date he was brought before the Provost Court over which Major Murrell presided. He was then, for the first time, informed of the charge. It was orally stated to him that he was in that court on a charge of embezzlement growing out of his conduct of his business, in violation of Chapter 183 of the Revised Laws of Hawaii, 1935.

Upon this oral and only notification or specification of the charge, White entered by his attorney a written plea to the jurisdiction of the provost court, thus putting in issue both its jurisdiction of the subject matter and its jurisdiction of his person. (See Exhibit A annexed to Petition.) This plea was overruled on both grounds, whereupon White in writing demanded a trial by jury. (See Exhibit B annexed to Petition.) This demand was denied. White then filed a motion for a continuance supported by affidavits from his attorney indicating lack of time to prepare a defense and ill health on the part of his attorney. (See Exhibit C annexed to Petition.) This motion was also denied, and over White's objections the trial proceeded and he was found guilty of violating Chapter 183 of the Revised Laws of Hawaii, 1935, and sentenced to Oahu Prison—a Territorial prison—for five years. This trial started and was completed during the afternoon of August 25, 1942. It does not appear whether White was ever asked to plead to the oral charge.

The Provost Court mittimus ordered the Provost Marshal to take White and to deliver him to the Warden of Oahu Prison. It also ordered said Warden to receive White from the Marshal and to keep him until the sentence had been served. (See Exhibit D annexed to Petition.)

There is no appeal allowed under the Military Orders from a provost court judgment. However, as a matter of grace, upon an administrative review by the Military Governor the Provost Court's five-year sentence in the White case was reduced to four years. (See Petitioner's Exhibit Q.) No reason for the reduction was assigned.

White was confined as above outlined until released by order of this Court.

At all times herein mentioned and with respect to all acts done by himself or his agents, Generals Short and Emmons functioned as Military Governor of Hawaii, and under the name and in the style thereof.

## III. Further Facts.

■ The highly successful Battle of Midway was over early in June, 1942.

---

[10] Appendix IX.

[11] Honolulu Star-Bulletin, Dec. 19, 1941, 9.

[12] Appendix X.

After that battle it was and is common knowledge that the danger of a land invasion of Hawaii was removed and has never since re-existed. (See Petitioner's Exhibit A–1 under date of June 6 and 7, 1942; Petitioner's Exhibit E; Petitioner's Exhibit N–1 and N–2.)

The army concedes that to date no acts of sabotage have been committed by the Japanese population of the Territory— aliens and citizens included. (See Petitioner's Exhibit G–3.)

1. It was stipulated that if Samuel B. Kemp, Chief Justice of the Supreme Court of the Territory of Hawaii, were called as a witness he would testify:

(a) That he has held that office since June 20, 1941;

(b) That during the time of the White case in the Provost Court of Honolulu the Territorial courts were "ready, willing and prepared to perform their normal functions"; (See also Petitioner's Exhibit F.)

(c) That he was never consulted by the military with respect to re-opening the Territorial courts for the trial of persons charged with violating the laws of the Territory;

(d) That subsequent to April 1942 there was no sound reason for denial by the military of trial by jury to civilians charged with violating Territorial law.

2. It was stipulated that if Albert M. Cristy, Senior Judge of the Circuit Court, First Judicial Circuit, Territory of Hawaii, were called he would testify to the same effect as he did in Ex Parte Duncan, D.C., 66 F.Supp. 976, to wit, that he knew of no reason why the civil courts of the Territory could not have functioned normally in August 1942 and they would have done so except for military orders to the contrary.

3. Harry Steiner, Senior Judge of the Honolulu District Court, by stipulation, testified to like effect with respect to his court which has power under Territorial law to bind defendants over for the action of the circuit court grand jury.

4. It was also stipulated that if I. M. Stainback, presently Governor of Hawaii, were called he would testify, in addition to what he said in the Duncan case:

(a) That he has been Governor of Hawaii since August 24, 1942;

(b) That during August 20-25, 1942— the time elapsing between White's arrest and conviction in the Provost Court—the civilian population of Hawaii was orderly, invasion by the enemy was not imminent, and that trial of civilians by military courts for offenses against the laws of Hawaii was not only not necessary but not justified by then existing conditions. (See also Petitioner's Exhibits G–1, H and I.)

5. Like stipulation brought General Robert C. Richardson's testimony in the Duncan case into this case. From such it appears that General Richardson was not in August 1942 acting as Military Governor of Hawaii—he was not even in Hawaii at that time. Yet his testimony in another case incorporated here makes him say that:

(a) The further the enemy is pushed back in the Pacific the greater becomes the danger to Hawaii;

(b) The trial of civilians by provost courts for violation of Territorial law was a military necessity. To enforce his orders it is necessary from a military standpoint for the Commanding General to have control of the courts so as to avoid the delays which he believes inherent in civil courts, and also so as to avoid the political (in its best sense) pressures to which he thinks the courts of our country are susceptible. (For an illustration of the General's theory of his power over and control of courts—even civil courts—see General Orders No. 31 [new series],* Petitioner's Exhibit L, retracted by General Orders No. 38 [new series], Respondent's Exhibit 10—the most disgraceful threat ever made anywhere against the judicial branch of our Government.)

6. The same stipulation which incorporates the General's testimony also incorporates Admiral Nimitz's testimony. The Admiral, however, says nothing about a military necessity now or in 1942 for the trial of civilians by military courts for violations of Territorial law. He does,

* See Appendix X, p. 994.

however, support the General's contention that martial law was necessary in 1942.

### IV. Contentions.

1. The petitioner obviously contends that at least in August 1942 no military necessity existed in Hawaii which might justify the trial of civilians by military courts for alleged violations of the laws of the Territory of Hawaii. Therefore, it is argued, White was unlawfully deprived of his constitutional rights to be charged with the commission of a felony only upon an indictment by a grand jury; to a trial by a jury; to time to prepare his defense and to process to secure the attendance of witnesses in his behalf.

2. The respondent contends that:

(a) The declaration of martial law and the suspension of the privilege of the writ of habeas corpus by the Governor of Hawaii on December 7, and as approved by the President, was valid and has never been revoked. As if the foregoing invocation of Section 67 of the Organic Act be insufficient in point of law, it is said in any event the Military Governor of Hawaii on March 10, 1943, by General Orders No. 2, Section 1.01 (new series), declared that "martial law remains in effect and the privilege of the writ of habeas corpus has been, and remains, suspended." (Up until this date the Military Governor had ordered the writ itself suspended.) Therefore it is said this Court has no jurisdiction to grant the relief sought by the petitioner.

(b) In August 1942 Hawaii was in imminent danger of invasion and hence martial law was then valid; additionally it is said Hawaii has been since December 7 and now is in a theater of operations, part of a combat zone, in an active theater of war.

(c) The Provost Court had jurisdiction of the person and of the subject matter in the White case, and because of General Orders No. 4[13] petitioner had no constitutional rights which the military had to respect.

(d) There was military necessity for trying civilians in provost courts in August 1942 for violation of Territorial law because the Governor of Hawaii had requested the Commanding General to exercise the judicial powers of the Territorial courts "until the danger of invasion is removed," and the General, under the name of Military Governor of Hawaii, has complied with the request of the Governor of Hawaii, the danger of invasion existing in August 1942 and today.

### V. Conclusions of Law.

Upon the facts found (Parts I, II and III), I conclude as a matter of law that:

1. It is not necessary to a disposition of this case to decide whether or not martial law validly existed in Hawaii in August 1942.

2. Assuming a valid state of martial law to have existed in Hawaii in August 1942, White was nevertheless deprived of his constitutional rights under the Fifth and Sixth Amendments because:

(a) The Governor of Hawaii had no judicial powers to delegate to the General, hence the Military Governor's agency—the Provost Court—had neither jurisdiction over White's person nor over the subject matter of the White case—the laws of the Territory of Hawaii.

(b) Ignore the fact that the General relied solely upon the December 7 proclamation of the Governor of Hawaii as the exclusive source of his power to try civilians in his military courts for violation of Territorial law. Can the White case be justified in point of law upon the theory that martial law itself gave the Commanding General power in August 1942 to try civilians for violations of Territorial law? The answer is that it did not, for the evidence clearly reveals that there was not then any military necessity for White's trial in a provost court. Upon this theory also White was deprived of his constitutional rights.

### VI. Opinion.

The question of White's guilt or innocence of the charge is not involved in this case.

It is incumbent upon courts, especially United States Courts—" * * *

---

[13] Appendix V.

in time of war as well as in time of peace, to preserve unimpaired the constitutional safeguards of civil liberty, * * * " [14]

War does not suspend the Constitution, or any part of it. It is the supreme law of the land at all times.[15] Neither generals, governors, nor courts are exempt from its provisions at any time. The Federal Government's power to wage war and to wage it successfully [16] involves to be sure the rule that in wartime individual rights must yield in the face of necessity—and to the extent necessary—to the nation's innate and paramount power of self preservation.[17]

That White may be guilty of violating the Territorial statute defining the offense of embezzlement and prescribing the penalty therefor or that military courts mete out military justice at an accelerated pace, unhampered by the Bill of Rights, are not reasons for ignoring the mandates of the Fifth and Sixth Amendments.

"Constitutional safeguards for the protection of all who are charged with offenses are not to be disregarded in order to inflict merited punishment on some who are guilty." [18]

Military jurisdiction over a civilian unconnected with the armed forces must even during war be justified in point of law. What then is the justification for denying to White his constitutional rights?

(a) Upon the record—and it permits of no equivocation—the assigned reason is that the Governor of Hawaii delegated to the General all of the "powers normally exercised by the judicial officers" of the Territory, which powers the General exercised in the White case under the name and style of "Military Governor of Hawaii."

Of course Hawaii has never lawfully had either a military government or a "Military Governor," even though it has had both in fact. Such a government and title are lawful only with respect to conquered foreign territory.[19] Lacking the factual basis in Hawaii, United States of America, there is nothing then in the erroneously used title of "Military Governor" which lends support to the situation in the White case. The tinsel of the title here tends to obscure by justifiable American irritation the real question.

The precise and only question is, did the Governor of Hawaii have any judicial power to delegate? If not, the General's acts in reliance thereon were null and void and effected in the White case a denial of his rights under the Fifth and Sixth Amendments. Inferred Presidential approval would avail naught.

To state the question is to answer it. No citation other than the Organic Act is necessary. Water cannot rise higher than its source. By that Act, in conformity with the nation's democratic pattern, the government of Hawaii consists of three separate branches—the legislative, the executive, and the judicial—with neither at any time having the powers of the other two. That Act of Congress has been the law in Hawaii continuously and without interruption since 1900. Under it the Governor had no judicial power to give to the Commanding General on December 7, nor did the General need such in order to discharge his military duties.

The record prompts the statement that on December 7, 1941, the Governor of Hawaii "abdicated." History will treat him more charitably.

(b) Though tied to his pleadings—which accord with fact—there is nevertheless therein a faint suggestion that the General in the White case relied not upon the tenth paragraph of Governor Poindexter's December 7 proclamation, but upon his own powers as General in an area wherein martial law had been declared.

Despite the fact that the case was not presented to the Court upon this theory, let us look at it.

[14] Ex parte Quirin, 317 U.S. 1, 19, 63 S.Ct. 2, 87 L.Ed. 3.

[15] Ex parte Milligan, 4 Wall. 2, 71 U.S. 2, 120, 18 L.Ed. 281.

[16] War Powers Under the Constitution, Charles Evans Hughes, 42 A.B.A. Rep. 232, 238.

[17] Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

[18] Ex parte Quirin, 317 U.S. 1, 25, 63 S.Ct. 2, 9, 87 L.Ed. 3.

[19] Ex parte Milligan, 4 Wall. 2, 71 U.S. 2, 18 L.Ed. 281.

Fairman, recognizing the correctness of the first conclusion of law above stated, says:

"If the situation were governed solely by Section 67, construed nicely as a matter of agency, it might be questioned whether the Governor had not exceeded his powers. But so technical a view should not be taken of a provision meant to cover a multitude of dangers. If 'martial law' was to prevail, it should certainly be of such a form as would respond to the actual emergency. * * * There might have been danger of a different magnitude, such as a condition of 'lawless violence,' where the commander could properly have acted in aid of the Governor. But with the emergency such as it was * * * certainly the commander had a much larger scope of action, whether derived from Section 67 or otherwise." [20]

The date of the White case will here bear repetition: August 1942.

Fairman, after distinguishing the terms "martial law," "military law," and "military government," says by martial law he means "martial rule." He defines it as a rule springing from out of our nation's power of self preservation depending—"* * * for its justification upon * * * public necessity. * * * it is measured by the needs of the occasion." [21] In the foreword of his book his publisher puts it nicely also by saying:

"* * * 'martial law' is largely one of powers and liabilities, resting upon a background of what has been done, in fact, under given circumstances, rather than any great wealth of judicial precedents." [22]

Such indeed is and always has been the correct concept of martial law. It was so stated in Ex parte Milligan in 1866, which is still law today. Martial law is the law of public necessity and whether the year be 1866 or 1942 the necessity is determined upon and in relation to the then existing facts. [23]

"As necessity creates the rule, so it limits its duration." [24]

Thus it is that Anthony rightly states:

"Martial law never was intended to be of a permanent or even semi-permanent nature. Its existence is bottomed upon necessity . . . The moment order is restored, the necessity for martial law (hence its justification) ceases to exist." [25]

What then was the military necessity in Hawaii in August 1942 for the trial of White upon a Territorial charge in a military court? Absolutely none is revealed. But it is argued that the General says it was necessary from a military standpoint and out of deference to the executive branch, especially during wartime, the courts should not look beyond to the facts. Such is a doctrine itself imminently dangerous to the United States. The validity of martial law is always a judicial question. [26] One cannot lift himself up by his bootstraps. Here we are concerned only with the validity of the White case. Saying it was necessary to give him a military trial does not make it so.

"A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or facts change even though valid when passed." [27]

Here it is clear upon the record and upon the facts that White's military trial advanced, preserved, protected the military situation in Hawaii in August 1942 not one iota. Indeed, the converse may be said to be true. Necessity cannot be manufactured even by General Orders. It must be real, not artificial.

So it is that even under this theory, lacking the basis in fact of military necessity,

[20] The Law of Martial Rule, Col. Chas. Fairman, 2nd edition (1943) at pp. 241, 242.

[21] Fairman, op. cit. supra Chap. III, p. 47.

[22] Fairman, op. cit. supra Foreword, p. iii.

[23] Korematsu v. United States, 9 Cir., 140 F.2d 289, 296.

[24] Ex parte Milligan, 4 Wall. 2, 71 U. S. 2, 127, 18 L.Ed. 281.

[25] Martial Law in Hawaii, J. Garner Anthony, Vol. 31 (1943), California Law Review 477, 498.

[26] Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

[27] Chastleton Corp. v. Sinclair, 264 U. S. 543, 547, 44 S.Ct. 405, 406, 68 L. Ed. 841.

there was no justification for denying to White his constitutional rights as was here done by the Provost Court.

 The privilege of the writ is granted and the petitioner is discharged and his bond cancelled.

## Appendix I

### Territory of Hawaii

#### A Proclamation

Whereas, it is provided by Section 67 of the Organic Act of the Territory of Hawaii, approved April 30, 1900, that, whenever it becomes necessary, the Governor of that territory may call upon the commander of the military forces of the United States in that territory to prevent invasion; and

Whereas, it is further provided by the said section that the governor may in case of invasion or imminent danger thereof, when the public safety requires it, suspend the privilege of the writ of habeas corpus and place the territory under martial law; and

Whereas, the armed forces of the Empire of Japan have this day attacked and invaded the shores of the Hawaiian islands; and

Whereas, it has become necessary to repel such attack and invasion; and

Whereas, the public safety requires:

Now, therefore, I J. B. Poindexter, Governor of the Territory of Hawaii, do hereby announce that, pursuant to said section, I have called upon the Commanding General, Hawaiian Department, to prevent such invasion;

And, pursuant to the same section, I do hereby suspend the privilege of the writ of habeas corpus until further notice;

And, pursuant to the same section, I do hereby place the said territory under martial law;

And 1 do hereby authorize and request the Commanding General, Hawaiian Department, during the present emergency and until the danger of invasion is removed, to exercise all the powers normally exercised by me as Governor;

And I do further authorize and request the said Commanding General, Hawaiian Department, and those subordinate military personnel to whom he may delegate such authority, during the present emergency and until the danger of invasion is removed, to exercise the powers normally exercised by judicial officers and employees of this territory and of the counties and cities therein, and such other and further powers as the emergency may require;

And I do require all good citizens of the United States and all other persons within the Territory of Hawaii to obey promptly and fully, in letter and in spirit, such proclamations, rules, regulations and orders, as the Commanding General, Hawaiian Department, or his subordinates, may issue during the present emergency.

In witness whereof, I have hereunto set my hand and caused the seal of the Territory of Hawaii to be affixed.

Done at Honolulu, Territory of Hawaii, this 7th day of December, 1941.

J. B. Poindexter,
Governor of the Territory of Hawaii

(Seal)

By the Governor:

Charles M. Hite
 Secretary of Hawaii.

### Appendix II

#### Governor Poindexter's December 7 Radiogram to the President

I have today declared martial law throughout the Territory of Hawaii and have suspended the privilege of the writ of habeas corpus. Your attention is called to Section 67 of the Hawaiian Organic Act for your decision on my action.

### Appendix III

#### President's Radiogram to Governor Poindexter

Washington, D. C.
48 4 PM 9

Honorable Joseph B. Poindexter
 Governor, Territory of Hawaii
 Honolulu

Your telegram of December Seventh received and your action in suspending the writ of habeas corpus and placing the Territory of Hawaii under martial law in accordance with U.S.C. Title 48 Section 532 has my approval

Franklin D. Roosevelt

Appendix IV

Proclamation—United States Army

Headquarters, Hawaiian Department
Fort Shafter, 7 December 1941

To the People of Hawaii:

The military and naval forces of the Empire of Japan have attacked and attempted to invade these islands.

Pursuant to section 67 of the Organic Act of the Territory of Hawaii, approved April 30, 1900, the Governor of Hawaii has called upon me, as commander of the military forces of the United States in Hawaii, to prevent such invasion; has suspended the privilege of the writ of habeas corpus; has placed the Territory under martial law; has authorized and requested me and my subordinates to exercise the powers normally exercised by the governor and by subordinate civil officers; and has required all persons within the Territory to obey such proclamations, orders, and regulations as I may issue during the present emergency.

I announce to the people of Hawaii, that, in compliance with the above requests of the Governor of Hawaii, I have this day assumed the position of military governor of Hawaii, and have taken charge of the government of the Territory, of the preservation of order therein, and of putting these islands in a proper state of defense.

All persons within the Territory of Hawaii, whether residents thereof or not, whether citizens of the United States or not, of no matter what race or nationality, are warned that by reason of their presence here they owe during their stay at least a temporary duty of obedience to the United States, and that they are bound to refrain from giving, by word or deed, any aid or comfort to the enemies of the United States. Any violation of this duty is treason, and will be punished by the severest penalties.

The troops under my command, in putting down any disorder or rebellion and in preventing any aid to the invader, will act with such firmness and vigor and will use such arms as the accomplishment of their task may require.

The imminence of attack by the enemy and the possibility of invasion make necessary a stricter control of your actions than would be necessary or proper at other times. I shall therefore shortly publish ordinances governing the conduct of the people of the Territory with respect to the showing of lights, circulation, meanings, censorship, possession of arms, ammunition, and explosives, the sale of intoxicating liquors and other subjects.

In order to assist in repelling the threatened invasion of our island home, good citizens will cheerfully obey this proclamation and the ordinances to be published; others will be required to do so. Offenders will be severely punished by military tribunals or will be held in custody until such time as the civil courts are able to function.

Pending further instructions from this headquarters the Hawaii Defense Act [Laws 1941, Sp.Sess., p. 1], and the Proclamation of the Governor of Hawaii heretofore issued thereunder shall continue in full force and effect.

(Signed) Walter C. Short
Lieutenant General, U. S. Army, Commanding.
Military Governor of Hawaii.

Appendix V

General Orders No. 4 regulating trial of Civilians by Military Tribunals

Territory of Hawaii
Office of the Military Governor
Fort Shafter, T. H.
7 December 1941

General Orders
No. 4

By virtue of the power vested in me as Military Governor, the following policy governing the trial of civilians by Military Commissions and Provost Courts is announced for the information and guidance of all concerned:

1. Military commissions and provost courts shall have power to try and determine any case involving an offense committed against the laws of the United States, the laws of the Territory of Hawaii or the rules, regulations, orders or policies of the military authorities. The jurisdiction thus given does not include the right to try commissioned or enlisted personnel of the United States Army and Navy. Such per-

sons shall be turned over to their respective services for disposition.

2. Military commissions and provost courts will adjudge sentences commensurate with the offense committed. Ordinarily, the sentence will not exceed the limit of punishment prescribed for similar offenses by the laws of the United States or the Territory of Hawaii. However, the courts are not bound by the limits of punishment prescribed in said laws and in aggravated cases and in cases of repeated offenses the courts may adjudge an appropriate sentence.

3. The record of trial in cases before military commissions will be substantially similar to that required in a special court martial. The record of trial in cases before provost courts will be substantially similar to that in the case of a Summary Court Martial.

4. The procedure in trials before military commissions and provost courts will follow, so far as it is applicable, the procedure required for Special and Summary Courts Martial respectively.

5. The records of trial in all cases will be forwarded to the Department Judge Advocate. The sentences adjudged by provost courts shall become effective immediately. The sentence adjudged by a military commission shall not become effective until it shall have been approved by the Military Governor.

6. All charges against civilian prisoners shall be preferred by the Department Provost Marshal or one of his assistants.

7. The Provost Marshal is responsible for the prompt trial of all civilian prisoners and for carrying out the sentence adjudged by the court.

8. Charges involving all major offenses shall be referred to a military commission for trial. Other cases of lesser degree shall be referred to provost courts. The maximum punishment which a provost court may adjudge is confinement for a period of 5 years, and a fine of not to exceed $5,000.00. Military Commissions may adjudge punishment commensurate with the offense committed and may adjudge the death penalty in appropriate cases.

9. In adjudging sentences, provost courts and military commissions will be guided by but not limited to the penalties authorized by the courts martial manual, the laws of the United States, the Territory of Hawaii, the District of Columbia, and the customs of war in like cases.

By order of the Military Governor:

(Signed) Thomas H. Green
Thomas H. Green
Lt. Col., J.A.G.D.
Executive Officer

## Appendix VI

Text of Order of Chief Justice of Supreme Court of Hawaii posted at the entrance of Judiciary Building on December 8, 1941, announcing the closing of all Territorial courts.

Under the direction of the commanding general, Hawaiian Department, all courts of the Territory of Hawaii will be closed until further notice.

Without prejudice to the generality of the foregoing, all time for performing any act under the process of the Territory will be enlarged until after the courts are authorized to resume their normal functions.

## Appendix VII

General Orders No. 29 authorizing limited action of Territorial Civil Courts

Territory of Hawaii
Office of the Military Governor
Fort Shafter, T. H.
16 December 1941

General Orders
No. 29

Whereas, pursuant to the proclamation of Martial Law in the Territory of Hawaii the operation of the civil courts in the Territory of Hawaii has been suspended.

Now, therefore, by virtue of the authority vested in me as Military Governor, and for the purpose of more effectively carrying out the duties of such Military Governor, it is hereby ordered that all courts in the Territory of Hawaii are hereby authorized to exercise the following powers normally exercised by them during the existence of civil government:

1. The United States District Court for the Territory of Hawaii is hereby authorized to receive and file all petitions for the condemnation of land in the Territory of Hawaii, under any statutes and laws of the United States authorizing condemnation, needed by the Army or Navy of the United States; to receive and file deposits of checks into the Registry of said court, certificates of the clerk of said court and the Declaration of Taking; to make and enter orders on the Declaration of Taking, and orders of Immediate Possession; and to file and enter notices of pendency of action, with reference to such condemnations.

2. The Supreme Court of the Territory of Hawaii may make and enter all orders necessary for the preservation of the rights of litigants in all pending appeals or appeals which may be perfected to said court, and may hear and determine all such appeals, and make such further orders as may be necessary to carry out or enforce said orders, or any of them.

3. The circuit courts of the Territory of Hawaii and the several divisions thereof are hereby authorized to exercise the following of their normal powers under the civil laws applicable thereto:

Probate: To hear and determine all probate matters, provided, however, that no contested matter may be heard or entertained save by consent of the parties and which does not involve the subpoenaing of witnesses.

Equity: To hear and determine all matters involving trusts, trust accounts, bills of instructions and similar matters, provided, however, that no writs of habeas corpus, prohibition, mandamus, injunction or specific performance shall be issued or granted by any circuit judge, and further provided that no matter shall be heard or entertained which involves the subpoenaing of witnesses.

Actions at Law: To hear and determine all pending matters not involving jury trials where the subpoenaing of witnesses is not required; to hear and determine all appeals heretofore or hereafter perfected from the district courts; to make and enter all orders or judgments necessary to facilitate the immediate taking of land under condemnation proceedings by the Territorial, City and County, or county officers, orders of possession and details required therewith which do not involve the subpoenaing of witnesses or compulsory process.

Division of Domestic Relations and Juvenile Court: To hear and determine all matters either pending or to be brought for the support and maintenance of women and minor children or other dependents; to hear and determine all probate, guardianship and adoption matters as are exclusively under the jurisdiction of the Division of Domestic Relations; to hear all matters properly coming before the Juvenile Court.

Criminal Cases on Appeal: To hear and determine all pending appeals in criminal cases to the circuit courts of the Territory from district magistrates which do not involve jury trials.

Land Court: To hear and determine all pending matters not requiring the subpoenaing of witnesses; all formal matters connected with subdivisions; all normal minor petitions for the purpose of notation of marriage, death, divorce and other matters required to be noted on transfer certificates of titles; proceedings for substitution of lost certificates of title; recording of conveyances; issuance of transfer certificates of title; notations of encumbrances; ex parte petitions not involving the subpoenaing of witnesses; and the maintaining of the Office of the Registrar of the Land Court for the purpose of facilitating searching of records and certificates of transfers.

District Courts: Finish all pending matters where the subpoenaing of witnesses is not required.

All Courts: All courts authorized under the civil law to do so may perpetuate testimony or take depositions of witnesses and may make and enter all necessary orders to enable litigants to perfect appeals.

By order of the Military Governor:

(Signed) Thomas H. Green
Thomas H. Green
Lt. Col., J.A.G.D.
Executive

Appendix VIII
General Orders No. 57
Territory of Hawaii
Office of the Military Governor
Iolani Palace
Honolulu, T.H.
27 January 1942

General Orders
No. 57

Section I. Regulating Imports to Territory of Hawaii.
Section II. Civil Courts.

\* \* \* \* \* \*

Section II. Civil Courts.—Whereas, pursuant to the proclamation of martial law in the Territory of Hawaii the operation of the civil courts in the Territory of Hawaii was suspended; and

Whereas, by General Orders No. 29, dated December 16, 1941, the courts in said Territory were authorized to exercise certain of the powers normally exercised by them during the existence of civil government; and

Whereas, it is now advisable, that said courts be authorized to exercise certain other of their said powers,

Now, therefore, the United States District Court for the Territory of Hawaii, the Supreme Court of said Territory, and the justices thereof, the circuit courts, circuit judges at chambers, land court, juvenile court, tax appeal court and the district magistrates are hereby authorized, as agents of the Military Governor, to exercise their respective functions according to law, as it existed immediately prior to the declaration of martial law, except in the following respects:

1. No trial by jury shall be had, no session of the grand jury shall be held, nor shall any writ of habeas corpus be issued;

2. No circuit court or district magistrate shall exercise criminal jurisdiction except: Subject to the limitations prescribed by Section 4 in respect to the subpoenaing of witnesses, the circuit and district courts may dispose of cases pending on December 7, 1941, either upon plea or by trial whenever the intervention of a jury is not necessary or by order of nolle prosequi or dismissal on proper motion;

3. No suit, action or other proceeding shall be permitted against any member of the armed forces of the United States for any act done in line of or under color of duty; nor shall any suit, action or other proceeding be maintained against any person employed or engaged in any occupation, business or activity under the direction of the Military Governor or essential to the national defense for any act done within the scope of such employment;

4. No judgment by default shall be entered against any party except upon proof by affidavit or otherwise that the party is not engaged in military service nor employed or engaged in any occupation, business or activity under the direction of the Military Governor, or otherwise, essential to the national defense; nor shall any subpoena issue to require the attendance as a witness of any person so engaged or employed.

All prior orders inconsistent herewith are hereby repealed.

By order of the Military Governor:
(Signed) Thomas H. Green
 Colonel, J. A. G. D., Executive

Appendix IX
General Orders No. 122
Territory of Hawaii
Office of the Military Governor
Iolani Palace
Honolulu, T.H.
1 July 1942

General Orders
No. 122

Section I. Provost Court No. 3, Honolulu
Section II. Collection and Disposal of Swill, Dry Garbage, and Rubbish.

Section I. Provost Court No. 3, Honolulu.—Major Samuel E. Murrell, Judge Advocate General's Department, is appointed as a Provost Court and is assigned to duty as Provost Court No. 3, at Honolulu, Territory of Hawaii, for the trial of such persons as may be properly brought before it.

\* \* \* \* \* \*

By order of the Military Governor:
(Signed) Thomas H. Green
 Thomas H. Green
 Brigadier General, A.U.S.,
 Executive

## Appendix X
### Proclamation of General Emmons Assuming Military Governorship

To the people of the Territory of Hawaii:

Whereas, the Governor of the Territory of Hawaii, J. B. Poindexter, by a proclamation dated December 7, 1941, and made pursuant to the authority of Section 67 of the Organic Act of the Territory of Hawaii, approved April 30, 1900, called upon the Commanding General, Hawaiian Department, as commander of the military forces of the United States in this Territory, to prevent invasion; suspended the writ of habeas corpus; placed the Territory under martial law; authorized and requested the Commanding General, Hawaiian Department, and his subordinates, to exercise the powers normally exercised by the Governor and by subordinate civil officers; and required all persons within the said Territory to obey such proclamations, orders, and regulations as the Commanding General, Hawaiian Department, or his subordinates, might issue during the present emergency;

Whereas, Lieutenant General Walter C. Short, U. S. Army, Commanding the Hawaiian Department, by proclamation dated December 7, 1941, announced to the people of the Territory of Hawaii that, in compliance with the above recited requests of the Governor of the Territory of Hawaii, he had that day assumed the position of Military Governor of the Territory of Hawaii and had taken charge of the government of the Territory, of the preservation of order therein, and of putting these islands in a proper state of defense;

Whereas, Lieutenant General Walter C. Short, U. S. Army, Commanding the Hawaiian Department, has this day relinquished command of the Hawaiian Department in accordance with War Department radiogram dated December 17, 1941;

Whereas, Lieutenant General Walter C. Short, U. S. Army, Commanding the Hawaiian Department, has this day relinquished his position as Military Governor of the Territory of Hawaii;

And Whereas, I have this date assumed command of the Hawaiian Department in accordance with War Department radiogram dated December 17, 1941;

Now, therefore, I, Delos C. Emmons, announce to the people of the Territory of Hawaii that I have this day assumed the position of the Military Governor of the Territory of Hawaii, and as such Military Governor I adopt and confirm the instructions contained in the fifth to ninth paragraphs, inclusive, of the proclamation of the Military Governor of the Territory of Hawaii dated December 7, 1941, and the general orders and other actions taken pursuant thereto.

Done at Headquarters Hawaiian Department, Fort Shafter, Territory of Hawaii, this 17th day of December, 1941.

 (Signed) Delos C. Emmons
 Lieutenant General, U. S. Army,
 Commanding, Military Governor
 of Hawaii.
 Territory of Hawaii
 Office of the Military Governor
 Iolani Palace
 Honolulu, T. H.
 25 August 1943

General Orders
No. 31

Habeas Corpus Proceedings and Interference with Military Personnel in Performance of Military Functions Prohibited

1. Purpose

1.01. This General Orders is issued to eliminate, prevent, and prohibit interference with military personnel in the performance of their military functions or duties within the Territory of Hawaii, and to eliminate, prevent, and prohibit interference with military operations within the Territory of Hawaii, and thereby to further the defense and internal security of the Territory of Hawaii.

2. Habeas Corpus Proceedings Prohibited.

2.01. No clerk, deputy clerk, other officer, or employee of the District Court of the United States for the Territory of Hawaii, or of any court of the Territory of Hawaii, shall accept or receive for filing in such clerk's office, deposit for filing, or file, or allow, authorize, or permit to be

deposited for filing, or to be filed in such clerk's office, or with such clerk, any application or petition for a writ of habeas corpus, or make, issue, or execute any summons, citation, decree, order, or other process in any habeas corpus proceedings.

2.02. No judge of the District Court of the United States for the Territory of Hawaii or of any other court of or within the Territory of Hawaii, shall accept or receive for filing with, in, or before such judge or court, or in the office of the clerk of such court, or with such clerk, deposit for filing or file or allow, authorize, order, or permit to be filed with, in or before such judge or court, or in the office of such clerk or with such clerk, any application or petition for a writ of habeas corpus.

2.03. No judge of the District Court of the United States for the Territory of Hawaii or of any other court of or within the Territory of Hawaii, shall authorize, allow, decree, order, direct, or permit any habeas corpus proceedings to be commenced, maintained, or prosecuted before or by such judge or in or before the court in or over which such judge sits or presides; nor shall any such judge maintain, prosecute, hear, try, or determine in whole or in part, any habeas corpus proceedings or any phase of, or matter related to or in any way connected with, any habeas corpus proceedings.

2.04. No judge of the District Court of the United States for the Territory of Hawaii or of any other court of or within the Territory of Hawaii, shall issue any writ of habeas corpus, order that any writ of habeas corpus issue or be issued, or authorize, direct, permit, or allow any writ of habeas corpus to issue, or be issued, from the court over which or in which such judge presides or sits, or from the office of the clerk of said court, or by the clerk of said court.

2.05. No person, either in his own behalf or as attorney, agent, or in any way for or on behalf of another person, shall present to, file or attempt to file, or deposit for filing, any application or petition for a writ of habeas corpus, to or with the clerk, deputy clerk, a judge, other officer, or employee of the District Court of the United States for the Territory of Hawaii, or of any court of or within the Territory of Hawaii; nor shall any person, either in his own behalf or as attorney, agent, or in any way for or on behalf of another person, commence, maintain, or prosecute any habeas corpus proceedings in or before the District Court of the United States for the Territory of Hawaii or in or before any other court of or within the Territory of Hawaii.

2.06. Neither the United States Marshal for the Territory of Hawaii, any deputy or employee of such marshal, or any other officer or employee of the District Court of the United States for the Territory of Hawaii, or of any other court of or within the Territory of Hawaii shall accept or receive for service an application or petition for a writ of habeas corpus or copy thereof, or any writ of habeas corpus, any summons, citation, order, decree, warrant, or process of any kind in a habeas corpus proceedings; nor shall the United States Marshal for the Territory of Hawaii, any deputy of such marshal, or any other officer or employee of the District Court of the United States for the Territory of Hawaii, or any officer or employee of any court of or within the Territory of Hawaii, serve or attempt to serve any application or petition for a writ of habeas corpus or copy thereof, or any writ of habeas corpus, or any summons, citation, mandate, decree, order, warrant, or process of any kind in a habeas corpus proceedings or issued or arising out of any matter or proceeding related to or in any way connected with a habeas corpus proceedings.

2.07. Any judge of the District Court of the United States for the Territory of Hawaii, or of any other court of or within the Territory of Hawaii, before whom a habeas corpus proceedings now is pending, shall forthwith discontinue such habeas corpus proceedings, and shall not maintain or prosecute, or allow, permit, or authorize to be maintained or prosecuted before such judge or the court in which such judge sits or presides, such habeas corpus pro-

ceedings any further, and hereafter shall not hear, try, or determine said habeas corpus proceedings or any phase of or matter related to or in any way connected with or arising out of such habeas corpus proceedings; nor, except as authorized in paragraphs 2.08 and 2.09 herein, shall any such judge hereafter issue any order, decree, mandate, summons, citation, warrant, or process of any kind in any such pending habeas corpus proceedings, or in any matter, action, or proceedings arising out of, related to, or in any way connected with any pending habeas corpus proceedings; and such judge forthwith shall withdraw, revoke, and rescind any order, decree, mandate, summons, citation, warrant, or process of any kind, remaining unexecuted in any pending habeas corpus proceedings or in any matter, action, or proceedings arising out of, related to, or in any way connected with any pending habeas corpus proceedings.

2.08. Neither the Honorable Delbert E. Metzger, Judge, District Court of the United States in and for the Territory of Hawaii, nor any other judge of the said District Court of the United States in and for the Territory of Hawaii, shall make or issue, or order, direct, or cause to be made or issued, any process, mandate, summons, citation, order, decree, decision, determination, direction, or action in or relative to, or arising out of, by reason or because of, that certain habeas corpus proceedings now pending in the District Court of the United States in and for the Territory of Hawaii substantially styled or entitled as follows: "In the Matter of the Application of Walter Glockner," and bearing file or identification number or mark "H.C. 295," in the office of the Clerk of the District Court of the United States in and for the Territory of Hawaii. The said Delbert E. Metzger, Judge, District Court of the United States in and for the Territory of Hawaii, forthwith and immediately shall stay, refrain from, cause to be stayed, and desist from, all pending or further action or proceedings in said habeas corpus proceedings, or in any matter, action, or proceedings arising out of, related to, or in any way connected with, such pending habeas corpus proceedings.

2.09. Neither the Honorable Delbert E. Metzger, Judge, District Court of the United States in and for the Territory of Hawaii, nor any other judge of the said District Court of the United States in and for the Territory of Hawaii, shall make or issue, or order, direct, or cause to be made or issued, any process, citation, order, decree, decision, determination, direction, or action in or relative to, or arising out of, by reason or because of, that certain habeas corpus proceedings now pending in the District Court of the United States in and for the Territory of Hawaii substantially styled or entitled as follows: "In the Matter of the Application of Erwin R. Seifert," and bearing file or identification number or mark "H.C. 296," in the office of the Clerk of the District Court of the United States in and for the Territory of Hawaii. The said Delbert E. Metzger, Judge, District Court of the States in and for the Territory of Hawaii, forthwith and immediately shall stay, refrain from, cause to be stayed, and desist from, all pending or further action or proceedings in said habeas corpus proceedings, or in any matter, action, or proceedings arising out of, related to, or in any way connected with, such pending habeas corpus proceedings.

3. Interference with Military Personnel Prohibited.

3.01. No judge of the District Court of the United States for the Territory of Hawaii, or of any court of the Territory of Hawaii, no United States Marshal for the Territory of Hawaii or his deputy, nor other public officer, deputy of such public officer, public employee, or any other person, shall, for any cause, whether or not such cause is deemed lawful cause by such judge, or other public officer, public employee, or any other person, in any manner, way, or form impede, oppose, or interfere with The Commanding General, United States Army Forces, Central Pacific Area, or with any other member of the armed forces of the United States, in his performance of his military functions, military duties, or military orders, or in his performance of any orders heretofore or hereafter issued by the Military Governor of the Territory of Hawaii regard-

less of whether or not such order or orders are published in the newspapers of the Territory of Hawaii; provided, however, that nothing contained in this paragraph shall be construed or deemed to prohibit municipal police officers from arresting members of the armed forces for traffic offenses triable by the Provost Courts.

4. Provisions of This General Orders to be Liberally Construed.

4.01. Except where otherwise clearly indicated, in addition to being applicable to habeas corpus proceedings hereafter commenced, the provisions of this General Orders shall be applicable to habeas corpus proceedings heretofore commenced and now pending in the District Court of the United States for the Territory of Hawaii or in any other court of the Territory of Hawaii. The provisions of this General Orders shall be liberally construed so that the purposes for which this General Orders is issued, set forth in Paragraph 1.01, may be fully effected and accomplished.

5. Penalties.

5.01. Any judge of the District Court of the United States in and for the Territory of Hawaii, any United States Marshal or Deputy United States Marshal in and for the Territory of Hawaii, or any other public officer, deputy of such other public officer, public employee, or any other person, who directly or indirectly, expressly or impliedly, in any manner, shape, or form, shall violate, attempt to violate, evade, or attempt to evade, or aid, assist, or abet, in any violation of, any provision of this General Orders, upon conviction thereof by a Provost Court heretofore or hereafter appointed by the Millitary Governor of the Territory of Hawaii, shall be punished by confinement, with or without hard labor, for a period not to exceed five (5) years, or by a fine not to exceed five thousand dollars ($5,000.00), or by both such confinement and fine, or if convicted thereof by a Military Commission heretofore or hearafter appointed by the Military Governor of the Territory of Hawaii shall be punished as such Military Commission shall determine.

6. Issuance of This General Orders is Necessary Exercise of Martial Law Powers of Military Commander in This Theater of War.

6.01. This General Orders is issued by the undersigned as the Military Governor of the Territory of Hawaii and as the Military Commander of the military forces of the United States in this theater of war in which martial law duly has been established and exists. This General Orders is a necessary exercise of the martial law powers of the undersigned as Military Commander of the military forces of the United States in this theater of war.

 (s) Robert C. Richardson, Jr.
 Robert C. Richardson, Jr.
 Lieutenant General, United States Army
 Commanding General, United States Army Forces, Central Pacific Area
 Military Governor of the Territory of Hawaii

A true copy:
 (s) Wm. R. C. Morrison
 Wm. R. C. Morrison
 Colonel, J.A.G.D.
 Executive