**DOYLE et al. v. MILTON et al.**

District Court, S. D. New York.
April 3, 1947.

282

M. Victor Leventritt, of New York City, for plaintiffs.

Satterlee, Warfield & Stephens, of New York City, for defendants.

RIFKIND, District Judge.

The defendants in this stockholders' action move for summary judgment dismissing the complaint.

The corporate defendant, The Equity Corporation, is organized under the laws of Delaware and is registered as an investment company with the Securities and Exchange Commission pursuant to the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1 et seq. The individual defendants are directors, officers or employees of Equity, and all the individual defendants collectively constitute the management of the corporation.

In the Fall of 1946, the management formulated a plan of recapitalization for Equity and, in order to carry this plan into effect, the board of directors called a special meeting of the stockholders to be held on December 3rd, 1946. In connection with this meeting the management transmitted a proxy statement and a form of proxy to the stockholders.

This action was commenced on November 27, 1946, and on November 30th an amended complaint was filed. It is unnecessary to recite the allegations of the amended complaint except to indicate that it declared in two causes of action, first, a claim that the management's proxy material violated Regulation X-14 promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., and, secondly, that the control of the Equity Corporation was unduly concentrated in Messrs. Milton and Huntington, two of the defendants, through their ownership of approximately 25% of the common stock of Oceanic Trading Company, Inc. which in turn owned 21.97% of outstanding common shares of the Equity Corporation, and that such pyramiding was in violation of § 1(b) (4) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1(b) (4). The amended complaint prayed for a temporary and permanent injunction restraining the defendants from holding the special stockholders meeting, from soliciting proxies by the use of the management proxy material, from voting any proxies executed by stockholders to whom the management's proxy material had been sent and from voting the more than one million shares of Equity common stock owned by Oceanic Trading Company, Inc.

The defendants filed an answer denying the material allegations of the amended complaint. Thereafter, an application for temporary injunction was heard and denied and, upon appeal, the denial was affirmed.

Plaintiffs then obtained leave of court to file a supplemental complaint and although that pleading has not in fact yet been filed and served, I shall, on consent, treat the motion for summary judgment as addressed to that pleading.

The supplemental complaint is divided into four causes of action, and the first cause of action is further subdivided into five separate counts. The first cause of action alleges that the plaintiffs are the owners of shares of common stock of The Equity Corporation and that the action is brought on behalf of all common stockholders sim-

ilarly situated with the plaintiffs. As a jurisdictional allegation, plaintiffs declare that they are citizens of the State of Illinois, that none of the defendants is a citizen of Illinois and that the action arises under the Securities Exchange Act of 1934.

Plaintiffs further allege that defendants have engaged and are about to engage in acts and practices which constitute violations of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., and of rules and regulations of the Securities and Exchange Commission made and promulgated under said Act, and specifically in violation of § 14(a) of said Act, 15 U.S.C.A. § 78 n(a), and of Regulation X–14 of the S.E.C. The alleged violation consists of soliciting proxies for a meeting of stockholders by means of proxy material which, it is asserted, violates Rule X–14a–5 in that it is false and misleading.

The second cause of action alleges that Messrs. Milton and Huntington, defendants herein, own 25% of the common stock of Oceanic Trading Co., Inc., a Panama corporation, which in turn owns 21.97% of the outstanding common shares of the Equity Corporation and that such control is unduly concentrated through pyramiding and is contrary to the national public interest and the interest of investors as declared by the Congress in § 1(b) (4) of Investment Company Act of 1940, 15 U.S.C.A. § 80a—1(b) (4); that Messrs. Milton and Huntington will continue to exercise such control unless enjoined; and that defendant Milton has admitted that the true purpose of the plan of recapitalization is to assure and perpetuate the control of said Milton and his associates over the management of the Equity Corporation.

The third cause of action realleges all of the preceding allegations of the complaint and further alleges that unless enjoined the defendants Milton and Huntington will inequitably and in fraud of the corporation and its stockholders cause the Equity Corporation to amend its charter and to issue the shares of preferred stock contemplated by the plan of recapitalization in furtherance of their personal schemes and for their personal benefit to the irreparable damage and injury of the plaintiffs, the common stockholders.

The fourth cause of action realleges all of the preceding allegations of the complaint and further alleges that the defendants Milton and Huntington in furtherance of their personal gain and benefit and in fraud of the corporation have caused the corporation to utilize the time and energy of its officers and to expend its funds in the formulation of the plan and in the solicitation of proxies for which defendants Milton and Huntington are under· a duty to account for the waste of corporate assets involved.

The relief prayed for is in brief as follows:

I. A temporary restraining order, pending the determination of a motion for a preliminary injunction, directed against (a) the exercise of any power conferred by any proxy; (b) the holding of the special meeting of stockholders called for December 3, 1946, or any adjournment thereof; (c) the use of the mails or other means to solicit proxies.

II. A preliminary injunction directed against (a) the exercise of any power conferred by any proxy; (b) the holding of the special meeting of stockholders called for December 3, 1946, or any adjournment thereof; (c) the use of the mails or other means to solicit proxies, without correcting misleading statements and omissions, and without adjourning the special meeting pending the resolicitation of proxies.

III. A final judgment for the relief sought under II.

IV. A temporary restraining order restraining Milton and Huntington from voting the shares of Equity owned by Oceanic upon the plan of recapitalization.

V. A preliminary injunction for the relief set forth under IV.

VI. A final judgment for the relief sought under IV and V.

VII. A final judgment enjoining defendants from amending the charter of Equity so as to provide for the issuance of new preferred stock pursuant to the plan of recapitalization and from issuing said stock.

VIII. A final judgment directing Milton and Huntington to account to Equity for expenses paid by Equity in connection with the proxies and the plan.

■ No temporary injunction having been granted, as hereinabove stated, a special meeting of the stockholders of Equity was held on December 17, 1946, and was continued until December 23rd. At that meeting proxies obtained by the management and the opposition were voted. The management's plan of recapitalization was adopted and the certificate of incorporation of the corporation was amended. On December 30, 1946, under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., a registration statement was filed for the new securities contemplated under the plan of recapitalization. At the time of the hearing upon this motion the plan was in process of execution.

Insofar, therefore, as the complaint seeks to enjoin solicitation of the proxies, the voting of the proxies, the holding of the meeting, and the amendment of the charter, it is now moot. It does not follow that the entire complaint states only a moot claim. First, the question is open as to what relief the court might grant with respect to the use of proxies obtained by false and misleading proxy material; and, secondly, the court can still grant relief with respect to the requested disfranchisement of the Oceanic Corporation; and, thirdly, the court may still give relief with respect to the last cause of action, that requiring the defendants Milton and Huntington to account for the waste of assets incurred in connection with the solicitation of the proxies.

■ The last word of the Circuit Court of Appeals of this Circuit with respect to summary judgment is contained in its opinion in Dixon v. American Telephone & Telegraph Company, 2 Cir., 159 F.2d 863. I take the law to be that a motion for summary judgment will not lie where entertaining such a motion would constitute a trial by affidavits of issues of fact; that where there are issues of fact, summary judgment cannot be granted where the slightest doubt remains, Arnstein v. Porter, 2 Cir., 154 F.2d 464, 468, and that where the issue is one of law only, summary judgment is an appropriate remedy for the disposition of the issues.

■ The fourth cause of action states a claim upon which relief can be granted. It declares, in substance, that defendants Milton and Huntington, directors of the corporation and in control thereof, have caused the corporation to spend corporate funds to further, not a corporate purpose, but a private purpose of their own. If the allegation is true they can, by well established principles of law, be required to respond to this corporation for the waste of the corporate assets. The motion for summary judgment, as to the fourth cause of action, is denied.

■ The second cause of action became moot when the application for a temporary injunction was denied unless it states a claim for relief which reaches beyond the stockholders' meeting already held. If the premises upon which the second cause of action rests are sound it states a claim for the disfranchisement of Oceanic as a stockholder of Equity. These premises are that a court of equity may disfranchise Oceanic because it is used by Milton and Huntington as a device to control Equity by means of pyramiding condemned by § 1(b) (4) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1(b) (4), which provides:

" * * * it is hereby declared that the national public interest and the interest of investors are adversely affected— * * * (4) when the control of investment companies is unduly concentrated through pyramiding. * * * "

I cannot agree. The Investment Company Act is a carefully framed statute in which Congress has, with particularity, stated the means and methods, both judicial and administrative, by which its declaration of policy is to be executed. It has not confided in the courts a broad discretion to shape judicially contrived remedies for the mischief it has discovered. Insofar as power is entrusted to the courts under this Act its exercise must, of course, be steered toward the fulfillment of the national policy as declared. The policy itself, however, when declared in a statute as

comprehensive and detailed as this Act, does not authorize the courts to fashion sanctions withheld by Congress. See Stone, The Common Law in the U. S. 1936, 50 H. L.R. 4, 13.

This is quite unlike the type of situation envisaged by Holmes, J., in Johnson v. United States, 1 Cir., 1908, 163 F. 30, 32, 18 L.R.A.,N.S., 1194. Nor is it like Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293, where the court held that:

"A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest. It may in the public interest, even withhold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer."

This certainly does not support the argument that in the exercise of a jurisdiction not committed to it, a court may nevertheless grant relief, supposedly in the public interest, notwithstanding private right will suffer.

Plaintiff has cited cases from the fields of patent law and labor law, and many others can be cited in support of the proposition that public interest is a significant and at times paramount factor in the exercise of equity power. That can not be successfully controverted. In the case at bar, however, the court is asked to go much further: to assume that Congress has inadvertently omitted the power to disfranchise and that the court should supply the omission. All the internal evidence points inescapably to the conclusion that the omission is deliberate. Were the courts to supply it they would engage not only in judicial lawmaking where Congress is silent but in overruling the Congressional mandate.

The motion to dismiss the second cause of action is granted.

The substance of the third cause of action is that defendants have used false and misleading proxy soliciting material and

control of Oceanic to secure stockholders approval of amendments to the corporate charter and the issuance of new stock, pursuant to a recapitalization plan proposed by them, the true purpose of which is to perpetuate defendant Milton in his control of the management of the corporation, and thus to further Milton's personal interests "to the irreparable damage and injury" of the plaintiffs and similarly situated common stockholders.

Since the new stock does not appear yet to have been issued, the claim is clearly not moot; and I shall assume for purposes of this motion that the courts may provide a remedy against the issuance of stock authorized by a plan adopted by means of false proxy statements. The question is thus reached whether the allegation that the proxy material is false and misleading is so devoid of merit as to warrant dismissal of the claim on a motion for summary judgment. This complaint specifies 31 instances in which the proxy material is asserted to be false and misleading. It is unnecessary to detail them. The statement submitted by the Securities Exchange Commission upon the motion for a temporary injunction clearly demonstrates that they turn upon two questions: 1. Is a proxy statement false or misleading which fails to state possible alternatives to the course of action for which the management seeks approval? 2. Is a proxy statement false or misleading which fails to state (what for present purposes is assumed to be true) that the management's proposal was conceived and planned to perpetuate the management's control of the corporation?

With respect to the first question the Securities Exchange Commission in its memorandum states:

"It is not a requirement under the proxy rules that proponents of a particular plan present or discuss every other possible plan or alternative".

Reflection discloses that a rule which did require such discussion would be quite impractical. Theoretically the number of alternatives to any proposed course of action is infinite. To drench the stockholder with a flood of information may defeat the very purpose of the rule. In any event the Se-

curities Exchange Commission is entitled to great deference in construing its own rules.[1] I, therefore, answer the first question in the negative.

 The second question is not embraced in the Securities Exchange Commission's memorandum and I have been unable to find any discussion of the question in the reported authorities. Presumably a proxy statement may be false or misleading if it omits data from which the inference of selfish motive may be drawn. Our question is narrower: Assuming the data are supplied, is the proxy statement nevertheless false if it omits a confession of selfish motive.

The statute, § 14(a) of the Securities Exchange Act of 1934, confides in the Securities and Exchange Commission very broad rule making powers with respect to proxy solicitation. The Commission has promulgated such a regulation, X–14. That regulation does not in terms require the inclusion of statements as to motive. If the translation of policy into practice were fairly plain a court would probably be justified in discovering the answer to the question in the major premise of the regulation. Such translation, however, is not free from doubt. While the imperative of full disclosure seems to demand the inclusion of statements of motive, considerations of enforcibility, of the difficulty of ascertaining the truth, of utility, may counsel the omission of such a requirement. Moreover, if disclosure of private motive is demanded of management, the same disclosure should be required of the opposition. Practical evaluation of the diversion of administrative effort into the exploration of private motivation—a problem which has baffled the psychologists[2]—may deter the Commission from undertaking the application of such a rule of disclosure.

The upshot of these reflections is that a court ought not to rush in where the experts fear to tread. At any rate I think it more prudent not to anticipate the Commission's determination that the proposed course is both feasible and in the public interest. Until the Commission speaks my answer to the second question is No.

 The motion to dismiss the third cause of action is therefore granted.

The first cause of action is embraced within the third. Insofar as it is addressed to securing injunctive relief against the solicitation of proxies and the voting of proxies so solicited, it is moot. To the extent that it reaches beyond that, it falls with the third cause of action.

The motion to dismiss the first cause of action is granted.

---

[1] The interpretation of a statute by an administrative body charged with the duty of executing it is entitled to great weight. United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345, rehearing denied 311 U.S. 724, 61 S.Ct. 53, 85 L. Ed. 472; Securities and Exchange Commission v. Transamerica Corp., D.C. Del.1946, 67 F.Supp. 326, 333 n. 12. A fortiori, the interpretation by such body of its own regulation, is entitled to no less weight. See, Bowles v. Mannie & Co., 7 Cir., 1946, 155 F.2d 129, 133, certiorari denied 67 S.Ct. 82.

[2] See Hammond v. Sully, C.A.D.C.1919, 48 App.D.C. 320, "As long as a man keeps himself within the law * * * we must leave his motives to Him who searches hearts"; Chambers v. Baldwin, 91 Ky. 121, 15 S.W. 57, 59, 11 L.R.A. 545.