## KAM KOON WAN et al. v. E. E. BLACK, Limited.

### Civ. No. 672.

District Court, Hawaii.

Feb. 5, 1948.

Samuel Landau, of Honolulu, T. H. (Padway, Goldberg & Previant, of Milwaukee, Wis., of counsel), for plaintiffs.

Garner Anthony, of Honolulu, T. H. (Robertson, Castle & Anthony, of Honolulu, T. H., of counsel), for defendant.

McLAUGHLIN, District Judge.

The plaintiff in this Fair Labor Standards Act case sues (29 U.S.C.A. § 216(b)) for himself and in behalf of others similarly situated to recover back wages for six years prior to Nov. 14, 1945.

After filing its second amended answer, the defendant moved for a partial summary judgment, Federal Rules of Civil Procedure, rule 56(b), 28 U.S.C.A. following section 723c. The plaintiff filed no counter-affidavits. The question for decision is therefore whether or not the plead-

ings and undenied affidavits disclose the existence of a genuine issue as to any material fact.

I. Briefly insofar as the questions of law raised by the motion are concerned, the situation is as follows: The defendant was a general contractor who employed the plaintiff and many others. On and prior to Dec. 7, 1941, the defendant was engaged essentially in work upon defense projects pursuant to government contracts. Martial law was declared in Hawaii on Dec. 7, and immediately the Commanding General of the Hawaiian Department, United States Army, proclaimed himself Military Governor of Hawaii and set up a prefabricated military government. (See Duncan v. Kahanamoku (White v. Steer), 1946, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688; Ex parte Duncan, (D.C.Hawaii 1944, 66 F.Supp. 976; Ex parte White, D.C. Hawaii 1944, 66 F.Supp. 982; and Ex parte Spurlock, D.C.Hawaii 1944, 66 F. Supp. 997. For citations of numerous articles upon the subject see Anthony, Hawaiian Martial Law in the Supreme Court, Yale L. J. Nov. 1947.) Military government obtained in Hawaii until Oct. 24, 1944, when it was terminated by presidential proclamation (Proclamation No. 2627, 9 F.R. 12, 831).

By military order No. 38[1] as of Dec. 7 all employees of contractors and subcontractors paid out of federal funds were frozen to their jobs, their wages were also frozen, and their regular and overtime hours prescribed. This and all other military orders which will be mentioned affected the defendant and its employees, as the defendant was described and listed by the Military Governor as a government contractor or subcontractor.

Further, at all times during the existence of the military government in Hawaii whether or not a military order carried a specific penal provision—and none of the orders relating to wages and hours did— violations of military orders or of "policies of the military authorities" were punishable by a provost court[2] as it saw fit.

General Orders No. 91[3] in March 1942 amended General Orders No. 38, which had been effective since December 7. It provided, in part, as follows:

"2. The following policy, effective 1 April 1942, governing wages, hours of work, overtime, the employment and use of labor in the Territory of Hawaii, is announced for the information and guidance of all concerned. Nothing herein shall be construed as superseding or in conflict with the provisions of the Fair Labor Standards Act of 1938, or the Walsh Healey Public Contracts Act, [41 U.S.C.A. § 35 et seq.].[4] [Emphasis added.]

"a. Wages.—(1) Revised Wage Schedule No. 9, U. S. Navy Contractors, Pacific Naval Air Bases, effective 1 December 1941, is hereby designated as the standard wage scale for workers engaged in work for Army and Navy agencies, their contractors and subcontractors. No person seeking employment with the above mentioned employers shall be employed at a rate less than or in excess of the standard rate for the job as listed in Revised Wage Schedule No. 9, and as same may be revised from time to time, as approved by the Military Governor.

"(2) The above provision, relative to wages, shall not apply to Federal or Territorial, and City and County of Honolulu Civil Service employees.

"b. Hours of Work and Overtime.—(1) Normal work-week on war projects in the Territory of Hawaii shall be six (6) days of eight (8) hours each.

"(2) Overtime at the rate of one and one-half the regular rate will be paid for overtime in excess of forty-four (44) hours, or in excess of eight (8) hours in any one day. The maximum hours worked in any seven (7) consecutive days shall not exceed fifty-six (56), except in cases of emergencies and with the approval of the Chief of Military or Naval Service concerned.

"(3) Work shall be so scheduled that all workers will receive one (1) day off in seven (7). This day is to be in lieu of

---

[1] Appendix I.

[2] Appendix II.

[3] Appendix III.

[4] This underlined statement was not in

General Orders No. 38 nor in any of the other orders affecting labor—even General Order No. 10 (new series)—until the final order No. 40 (new series).

Sunday and Sunday work per se shall not be considered overtime, and no overtime shall be paid for Sunday except when it is worked consecutively in excess of six (6) days. It is the intent of this provision to make it possible for work on war projects to be carried on seven (7) days per week, and at the same time provide that all war workers shall have one (1) day of rest out of seven (7) for the purpose of recreation and to attend to personal business.

"(4) The provisions relative to hours of work and overtime shall not apply to: .(a) Federal, Territorial or City and County of Honolulu civil service employees; (b) Employees of employers mentioned in paragraph 2a above, who are in a supervisory capacity on a monthly salary basis.

"(5) The provisions of any contract with individual employees, labor unions, etc., in conflict with the provisions of this order are hereby suspended."

Thereafter from time to time alterations in this basic labor edict were made by other general orders,[5] but as they are of no especial significance to the question of law presented here under § 9 of the Portal-to-Portal Act, 29 U.S.C.A. § 258 they will not be referred to in detail unless necessary. Suffice it for present purposes to state that this basic military control of the labor situation in Hawaii remained in effect until October 1944, notwithstanding provisions of the Fair Labor Standards Act and other federal and territorial laws to the contrary. Even the War Labor Board was prevented by the military from exercising its jurisdiction in Hawaii.

On and after the first pay period subsequent to Nov. 1, 1943, by General Order No. 40 (new series), Wage Schedule No. 9 as further revised finally enabled compliance with the Fair Labor Standards Act, as well as with the military orders.

From the affidavit of an officer of the defendant company attached to the motion for summary judgment comes the following unchallenged statements:

1. That since Nov. 10, 1943, the defendant has paid all of its employees upon the basis of time and one-half for all work in excess of 40 hours per week, except two named clerical workers. (See fourth revision of Wage Schedule No. 9 by General Orders No. 40 (new series), supra.)

2. That from Dec. 7, 1941, to Nov. 10, 1943, about 80% of defendant's work was upon government contracts.

3. That from Dec. 7, 1941, to Oct. 24, 1944, the defendant was closed by the Military Governor as a contractor and subcontractor with the federal government and was subject to the orders of the Military Governor.

4. That during said period by military order Wage Schedule · No. 9 as revised from time to time dictated the hours, rates of pay, and overtime compensation which defendant could work and pay the plaintiffs, and that the defendant company was obliged under the ʻcompulsion of military order to abide by it.

5. That in good faith and reliance upon said military orders, the defendant company paid the plaintiffs in accordance therewith.

Although defendant rests its case squarely upon the military orders, even assuming them to have been invalid, it may be clarifying to mention that the Military Governor adopted Wage Schedule No. 9 from the Navy. Prior to the war this wage schedule was established by the Navy, with the approval of the Administrator of the Fair Labor Standards Act, for the Pacific Naval Air Base contractors.

From an undenied affidavit by defendant's attorney also supporting the motion, in addition to the martial law and military government facts which have been judicially noted above, comes this fact:

That Howard E. Durham, agent in Hawaii (prior to and early in the war) in charge of the Wages and Hours Division of the United States. Department of Labor, in the course of his participation in the labor affairs of the military government requested a ruling of the Wages and Hours Administrator as to the applicability of the Fair Labor Standards Act to con-

---

5 Note: Subsequent to "Restoration Day" March 10, 1943, when by the compromise of Washington some of its powers were returned to the Territory, the Military Governor . re-published orders which remained in effect, and they plus later additions constituted a new series of orders.

tractors and subcontractors engaged in work for agencies of the United States, and upon an unspecified date received the following radiogram:

"Howard Durham

"A General Martial Law Order would not Suspend Operation of Any or All Federal Statutes but the Martial Law Authority is Probably Empowered to Suspend Any Particular Law. In Absence of Order Suspending All or Part of F.L.S.A. Workers Performing Labor Pursuant to Martial Law Order May be Considered for Purposes of Enforcement as Government Employers (Sic) under 3 (D) and Hence Exempt.

Baird Snyder
Acting Administrator".

Whether this information was made known to the Military Governor and to the defendant is not made to appear from the affidavit. In any event, the defendant makes no claim that it relied upon this radiogram. The reason for the inclusion in the attorney's affidavit of this interesting but non-usable fact is, therefore, not apparent.

II. As to the period from Nov. 10, 1943, to the date of suit Nov. 14, 1945, it is agreed by the parties that all plaintiffs within the scope of the Fair Labor Standards Act have been paid by the defendant in accordance with its provisions. A partial summary judgment for the defendant for this period may be entered. November 10, 1943, it will be recalled marked the date on and after which it was possible incidentally to meet the requirements of the Fair Labor Standards Act as well as to obey the military orders.

The real legal controversy, therefore, pertains to the period Dec. 7, 1941, to Nov. 10, 1943. As to this period the defendant asserts no liability because it claims during this time it conformed to and relied upon in good faith an order of an agency of the United States, to wit, the Army acting through the Commanding General of the Hawaiian Department, who had declared himself also Military Governor of Hawaii.

The plaintiffs start their argument opposing the granting of the motion by inviting attention to the admonition of the Second Circuit Court in Doehler Metal Furniture Co. v. United States, 1945, 149 F.2d 130, where the court, speaking through Judge Frank, wisely pointed out the various cogent reasons why great care should be exercised in granting motions for summary judgment.

The progressive argumentative positions taken by the plaintiffs are that:

(a) Despite the lack of counter-affidavits there is a genuine issue of material fact in that defendant's affidavit is not "proof" of a good faith reliance upon an order of an agency of the United States.

(b) By nature military orders do not permit of good faith reliance. Whether they do or not, General Orders No. 91 declaring that "Nothing herein shall be construed as superseding or in conflict with the provisions of the Fair Labor Standards Act * * *" put the defendant on notice of a possible conflict between the order and the Act, and electing to follow the one more favorable to itself cannot form a basis for good faith defense.

(c) Military orders are not orders of an agency of the United States within the meaning of § 9 of the Portal-to-Portal Act. It is said Congress in using the word "agency" in § 9 must be taken to have used it in the sense that that word is defined by the Administrative Procedure Act, 5 U.S.C.A. § 1001(a), passed prior to the Portal-to-Portal Act. The Administrative Procedure Act excludes the governments of possessions and territories, and also the military authority exercised in time of war in the field or in occupied territory. The plaintiffs' emphasis here is upon the point that in view of § 67 of the Hawaiian Organic Act, 48 U.S.C.A. § 532, authorizing the Governor to declare martial law, the Military Governor was the alter ego of the territorial government, with an aside suggestion that perhaps Hawaii was occupied territory; and finally that

(d) The Portal-to-Portal Act is unconstitutional as it is violative of the 5th Amendment in that it is retroactive legislation divesting plaintiffs of vested rights.

I am satisfied that this is an appropriate case for the entry of a partial

summary judgment. As pointed out in Doyle v. Milton, D.C.S.D.N.Y.1947, 73 F. Supp. 281, 284: " * * * a motion for summary judgment will not lie where entertaining such a motion would constitute a trial by affidavits of issues of fact; that where there are issues of fact, summary judgment cannot be granted where the slightest doubt remains, Arnstein v. Porter, 2 Cir., 154 F.2d 464, 468 and that where the issue is one of law only, summary judgment is an appropriate remedy for the disposition of the issues."

■ Here there is no dispute at all concerning the facts. Indeed the plaintiffs did not even undertake to deny any of them by counter-affidavits probably because they, too, recognized the validity of the facts alleged by the defendant. It is a matter of common knowledge in Hawaii that during the days of military government one disregarded a military order or policy—even at one time unknown and unpublished ones[6]—upon the peril of being summarily brought before a provost court, whose high record of rapid-fire convictions made punishment, often irrespective of guilt and the laws of the United States or of the Territory, a foreseeable certainty. The situation was one of military dictatorship and one did as ordered to do. It well could be and no doubt was that the defendant knew or should have known that complying with the military orders was not also compliance with the Fair Labor Standards Act. It may even have occurred to the defendant that the entire military government was unlawful. But what the defendant knew, thought, or believed was immaterial. The Constitution and federal and territorial law was cast aside, and the defendant and all other persons in Hawaii were told by military order what to do and theirs was not to question or to reason why. There was no freedom of choice open to the defendant, and therefore this is not an instance of electing to rely upon the more favorable of conflicting rulings.

■ The suggestion that § 9 of the Portal-to-Portal Act when it says an employer has the defense of the type here involved if he "pleads and proves" certain facts means that such facts can only be proven in the traditional open court method, runs counter to the very theory of judicial economy upon which Rule 56 is predicated. Certainly Congress had in mind the existence of the Federal Rules of Civil Procedure when it passed the Portal-to-Portal Act. Congress for the purposes of the Portal-to-Portal Act cannot, therefore, be said to have required greater procedural safeguards than in cases arising under other federal laws. Having pleaded a § 9 defense under the Portal-to-Portal Act and proven it by an undenied affidavit, there is here with respect to the period Dec. 7, 1941—Nov. 10, 1943 in truth no genuine triable issue as to any material fact, and a summary judgment is in order for the only issues involved are issues of law. Lorentz v. R.K.O. Radio Pictures, 9 Cir., 1946, 155 F.2d 84; Gifford v. Travelers Protective Ass'n of America, 9 Cir., 1946, 153 F.2d 209; Batson v. Porter, 4 Cir., 1946, 154 F.2d 566; and Brooks v. Utah Power & Light Co., 10 Cir., 1945, 151 F.2d 514.

The Administrator of the Wages and Hours Division of the Department of Labor issued Nov. 12, 1947, a general statement of policy as to the bearing of the Portal-to-Portal Act upon the Fair Labor Standards Act, 12 F.R. 7655. With respect to § 9 of the Portal-to-Portal Act he interprets "good faith" in a Fair Labor Standards situation to call for the objective test of whether or not the employer acted in the premises as a reasonably prudent man would have acted under the same or similar circumstances. He adds that "good faith" requires honesty of intention and no knowledge of facts which ought to put him upon inquiry (§ 790.15). He also points out that actual conformity and reliance with an administrative regulation, order, ruling, approval or interpretation of an agency of the United States is required (§ 790.14 and § 790.16). "Agency of the United States" he interprets to mean that the regulation or order, etc. was made by persons vested under the statutes with real power to act for the government and as, rather than for, the highest administrative authority of the government establishment.

---

[6] General Orders No. 31 (new series) published in 66 F.Supp. 994.

Having conformed to and relied upon the military orders, under all the facts and circumstances can it be said as a matter of law that the defendant did so "in good faith"? Generally, as derived from equity, this phrase connotes a state of mind characterized by honesty of purpose, freedom from intention to be unfair, and the absence of known or readily discoverable facts which would lead to further inquiry. 35 C.J.S., Faith. However, as the Administrator has pointed out, for the purposes of the Portal-to-Portal Act the test is not alone a subjective one, but is also the objective one of a reasonable prudent man. In brief, Congress desired to make this defense available to employers who honestly had been misled by their own government speaking through one of its authorized spokesmen to pursue a course of action which ultimately is found to be at variance with the laws.

On the subjective side we have the undenied representation that the defendant had honest intentions. This I construe to mean that regardless of what it knew or thought in the best interests of the war effort it accepted the military orders in a soldierly manner. And it is also clear that it knew or should have known it was not complying with the Fair Labor Standards Act when it obeyed the military orders. But certainly no one can question the fact that under the military government condition which confronted defendant it did act as a reasonable prudent man, having no army, would have acted. It was futile to mention what the law was, for the Military Governor was the law. The choice was clear: obey or be punished, irrespective of the law, whose force and effect had been supplanted by the force of military control.

The proposition that the "Nothing herein * * *" phrase found only in General Orders Nos. 91 and 40 (new series) made it impossible to conform to and rely upon the military orders "in good faith," as it gave notice of a variance between the Act and the orders, may be so. It is, however, of no significance, for as a matter of law the defendant was charged with this notice anyway, and actually as an alert business entity must have known it was not paying and working its employees as directed to do by the Fair Labor Standards Act. The important fact is that the defendant presumably would have complied with the Act if it could have and did so as soon as it could, but until the military orders allowed, compliance was impossible. Perhaps Congress in passing the Portal-to-Portal Act did not have its attention directed to the situation which developed in Hawaii due to power usurped and exercised by the Army during this period. But it does seem to me to be within the spirit of the legislation and to present a defense which in its nature is even stronger than the typical § 9 defense. This is not an instance of an employer electing to follow a civil order, rule or regulation issued by an officer of the government. Rather it is an instance, which would not happen in a State, of a military officer of our government, with the full support of the Secretary of War, under arms dictating to employers within the area where he had taken unto himself all power in the guise of a Military Governor that they follow his policy relative to hours and wages—not that of Congress—or else! It, therefore, seems to me to present a far stronger defense than that which Congress had indicated it was willing to recognize and to be within the aim and spirit of § 9 of the Portal-to-Portal Act.

There remains under this topic the further troublesome question of whether under the circumstances described the Commanding General and Military Governor of Hawaii during the time in question represented with authority an "agency of the United States."

Certainly if the Military Governor of Hawaii represented an agency of the United States that agency was the United States Army. The argument that the term as used in the Portal-to-Portal Act must be taken to have the same meaning as it has in the Administrative Procedure Act, 5 U.S.C.A. § 1001 (a), previously enacted, and that as the military government of Hawaii was simply the alter ego of the territorial government, it was hence an agency of the Territory and excluded by definition from the term "agency of the United States," is unsound. In the first

place the Portal-to-Portal Act and the Administrative Procedure Act are not in pari materia. Secondly, the military government was not the alter ego of the Territory. Had the situation been, as it started out to be, one of martial law with the Army aiding, assisting and supporting the territorial government in time of great emergency, then there might be some weight to be attached to the argument. But the fact of the matter is that the Army, with the emergency as the lever, persuaded the Governor of the Territory to declare martial law and to give to it powers, some of which he had but could not give away and some he did not have anyway, and thereafter it enlarged the unlawful grant and set up an independent government, which all—including the Governor of the Territory—were obliged to obey. As has been said, while the Territory was off balance due to the December 7 attack the Army usurped all of the normal powers of the territorial government, ignored the laws of the United States, and established a military dictatorship. By no conceivable process of reasoning can the military government, legally or factually, be held to have been the alter ego of the Territory. It bowed to no superior. Indeed, not until the President of the United States was enroute to Hawaii in July 1944 was the title of "Military Governor" relinquished.

█ Although the Administrative Procedure Act has no bearing upon the Portal-to-Portal Act because the two acts are totally unrelated, passing notice may be taken of the suggested possibility that under our facts § 1001 (a) (3) of 5 U.S.C.A. (Administrative Procedure Act) excludes the Army from being considered an "agency" of the United States. This suggestion has no merit for even if that Act were applicable, the Army in Hawaii legally was not "in the field" or in "occupied territory", even though in fact it acted in that manner. Indeed, if this Act aids here at all, it supports the point that outside of the exceptions mentioned, the Army is an "agency" of the United States.

█ The congressional findings and declaration of policy, particularly finding numbered 9, 29 U.S.C.A. § 251 (a) (9), of the Portal-to-Portal Act and § 10 of the Act, 29 U.S.C.A. § 259, establish clearly that the phrase "agency of the United States" in § 9 was intended to have a wide scope. This is made to appear distinctly from the fact that § 9 relates only to the confused past, whereas § 10 relates to the future. It was only as to the future that Congress limited the meaning of the phrase "agency of the United States" to mean three specific agencies of the government. There is no real need to resort to the Act's legislative history, but if such were necessary support for the broad interpretation of this phrase in § 9 as distinguished from § 10 could be found in the Conference Committee Report, wherein it was said as to § 9: "It will thus be seen that the administrative regulation, order, etc., does not have to be in writing nor does it have to be a regulation, order, etc., of the Federal agency which administers the Act in question. It will be sufficient if the employer can prove that his act or omission was in good faith in conformity with and in reliance on an administrative regulation, order, etc., of any Federal Agency."

In Representative Walter's statement upon the bill addressed to this type of problem is found the following: "* * * there must have been literally thousands of instructions sent out by the Army, the Navy and the Maritime Commission and other governmental officials to employers having government contracts during the war that were never issued or confirmed in the usual way, but the employer felt that the person giving those instructions was in a position to speak with authority and in those classes of cases we hope this measure will provide a defense."

█ In view of the congressional findings and declared objective of the Portal-to-Portal Act, the liberal interpretation which Congress intended to place upon the phrase "agency of the United States" so far as § 9 is concerned and the Act's legislative history, I am satisfied that the military orders here involved come within the meaning of the statutory words "regulation, order, ruling, approval, or interpretation" and were orders of an "agency of the United States." I reach this conclusion being fully aware that it was not the normal function of the Army to concern

itself directly with the Fair Labor Standards Act and to make orders, rulings and interpretations of it to suit itself. I am further aware of the fact that the whole structure of military government supporting these military orders was probably unlawful. But the fact is that despite its probable unlawful nature, despite exceeding its jurisdiction, these things were done by the Army with the full support of the War Department. If ever there was a case where the government was responsible for an employer not complying with the Fair Labor Standards Act this is it, for here this defendant was mandated by the Army to ignore that law and to comply with its orders, which it knew or should have known were at variance with the law. The only possibly annoying factor affecting this legal conclusion as a practical matter is that upon the sidelines the same government which allowed its Army to ignore the law and to set up a fictitious government in Hawaii may be profiting by its toleration, until 1944, of the wrongdoing of one of its agents. I refer to the presumed possibility that if the defendant here did not have this defense available and was liable under a cost-plus contract, the government might have to reimburse the defendant. Such, however, rests upon the conscience of the sovereign and not upon the law.

Finally, as to § 9 of the Portal-to-Portal Act it is argued that the Act is violative of plaintiffs' "vested rights" and under the guarantees of the 5th Amendment the Act is unconstitutional. Granting, as Judge Leavy says in Cochran v. St. Paul & Tacoma Lumber Co., D.C. W.D.Wash. 1947, 73 F.Supp. 288, 290, that the Portal-to-Portal Act is "* * * drastic * * * exceptional * * * extraordinary, and * * * unusual," this question has been raised to date many times, and as pointed out recently by Judge Chesnut in Seese v. Bethlehem Steel Co., D.C.D. Md. 1947, 74 F.Supp. 412, 417, no district court has yet held the Act unconstitutional. No higher court has as yet to my knowledge had an opportunity to consider the question.

The rights asserted by plaintiffs under the Fair Labor Standards Act are statutory rights, not vested rights protected by the 5th Amendment. That being so, until they have been exhausted and perfected it is within the power of Congress to take away or to modify a statutory right previously given by the Fair Labor Standards Act. This it has done in § 9 of the Portal-to-Portal Act by making available to an employer under prescribed conditions a complete defense to that right. Here in a timely manner the defendant has set up and proven that statutory defense. See Seese v. Bethlehem Steel Co., supra, for collection of cases to date upholding the constitutionality of the Portal-to-Portal Act.

III. In view of the holding above, consideration of the further defense raised that in any event all of the plaintiffs except the original one are barred by the application of the pleaded special territorial statute of limitations, Act 174, Session Laws of Hawaii 1945, p. 284, could be avoided.

However, upon the assumption that it may eventually be held that by nature a military order is not susceptible of a good faith conformity and reliance defense or that better defenses within the spirit of § 9 of the Portal-to-Portal Act cannot be recognized, I shall consider this final point of defense.

The consideration of this defense involves two questions: the first its applicability and the second its constitutionality.

This 1945 territorial special statute reads as follows:

"Series D-177: Act 174

"An Act Relating to Limitation of Actions and Creating a New Section of the Revised Laws of Hawaii 1945 to be Numbered Section 10429.01.

"Be it Enacted by the Legislature of the Territory of Hawaii:

"Section 1. Chapter 217 of the Revised Laws of Hawaii 1945 is hereby amended by adding, immediately following section 10429, a new section to be numbered 'Section 10429.01' to read as follows:

"'Sec. 10429.01. (Recoveries authorized by federal statute.) Whenever any federal statute provides for an imposition of a civil penalty or liquidated damages or im-

564

poses a new liability or enlarges any existing liability and the statute does not specify the period within which suit to recover such penalty, liquidated damages or any sum arising out of any such new or enlarged liability may be brought, such suit, if brought in a territorial court, must be filed with the clerk of such court within one (1) year from the date the cause of action arises or be thereafter barred; provided, however, that with respect to existing causes of action for such penalty, liquidated damages or sum arising out of such new or enlarged liability which have not been barred as of the effective date of this Act, suit must be brought, if at all, within six (6) months from the date of the approval of this Act.' (L. 1945, c. 174, s. 1.)

"Section 2. This Act shall take effect upon its approval.

"(Approved May 15, 1945.) H.B. 719, Act 174."

 I do not believe this statute to be applicable. First this suit is not one brought, as it could have been, under the Fair Labor Standards Act in a territorial court. It is argued that this federal court is a territorial court in a large sense. It is not. It is a legislative federal court for, but not of, the Territory. It is not a court of that semi-independent political entity known as the Territory of Hawaii. See the Hawaiian Organic Act, 48 U.S.C.A. § 491 et seq., especially §§ 631–636 and §§ 641–645, and Alesna et al. v. Rice, D.C.D. Hawaii 1947, 69 F.Supp. 897, 899.

 But it is further argued that regardless, there being no limitation in the Fair Labor Standards Act, this court must apply the applicable territorial statute of limitations and this is it. The full legislative history of Act 174 is unavailable for the territorial legislature keeps no record of its debates. Such information on this score as is available in the form of committee reports (H.J. 1945, 1246 and Sen. J. 1945, 939) simply emphasize the fact apparent from the statute that this legislation was designed to apply to suits brought under the Fair Labor Standards Act in territorial courts and to provide there a one-year "limitation on any action to re-

cover a penalty or liquidated damages imposed by federal statutes," (H.J. 1945, 1246). Charging the territorial legislature with not using useless words, with knowledge that many such special statutes of limitations had been held to be an unjust discrimination against a federally created right and hence unconstitutional, Rockton & Rion Ry. v. Davis, 4 Cir., 1946, 159 F.2d 291, the applicability of this statute in this court is doubtful for the reason that it is not one of general application, but is a very special statute meaning what it says, namely, that it relates to suits under a federal statute only when brought in a territorial court to recover a civil penalty or liquidated damages. See Reid v. Solor Corporation, D.C.N.D. Iowa 1946, 69 F. Supp. 626. The territorial legislature apparently did not wish to risk having its legislation on this subject held unconstitutional and so as to avoid that question confined itself to legislating only as to actions brought in its own courts. All other territorial statutes of limitations are of general application, and do not have the restriction as to courts which this statute has.

 However, for still another and a more substantial reason is the special territorial statute of limitations not applicable. The 313 persons similarly situated in whose behalf the original plaintiff also sued within the time limited by § 257 of the Portal-to-Portal Act sought to and succeeded in becoming parties plaintiff. Under ordinary rules, since the filing of a petition to intervene marks the introduction of a new party and a new cause of action, the situation is measured for the purposes of the statute of limitations as of the date it was filed. If that date was not within the time limited, the intervention is barred. An exception to that general rule exists, however, and its wisdom is well illustrated by this very case. Its application is also in harmony with the liberality with which the courts are admonished to interpret the remedial Fair Labor Standards Act. This exception prescribes that where there is a community of interest, a suit properly and timely instituted inures to the benefit of one who intervenes after the time limited has passed, 34 Am.Jur. "Limitation of Ac-

tions", § 278 at p. 225. The direct bearing of this exception to a spurious class action such as this brought under § 216 of the Fair Labor Standards Act is clear and finds support in Culver v. Bell & Loffland, 9 Cir., 1944, 146 F.2d 29; Pentland v. Dravo Corporation, 3 Cir., 1945, 152 F.2d 851; and Wright v. United States Rubber Co., D.C.S.D. Iowa 1946, 69 F.Supp. 621, 624.

Under these circumstances the claims of intervening plaintiffs relate back to the date when the action was filed by the original plaintiff for himself and in their behalf. There is, therefore, no basis for the operation of the special territorial statute of limitations. All parties plaintiff now before the court are taken to have brought their consolidated actions on Nov. 14, 1945.

This being so, I find it wholly unnecessary to question the presumed validity of the special territorial statute of limitations, Act 174, Session Laws of Hawaii 1945.

### Conclusion.

A partial summary judgment for the defendant may be entered against all plaintiffs, covering:

1. The period Nov. 10, 1943, to the date of suit, Nov. 14, 1945, on the ground that it is agreed that all of the plaintiffs entitled during that time were paid as required by the Fair Labor Standards Act; and

2. The period Dec. 7, 1941, to Nov. 10, 1943, on the ground that as a matter of fact a § 9 defense under the Portal-to-Portal Act has been established which as a matter of law is a legal defense within the meaning of said § 9.

The issues of fact and of law remaining to be disposed of in the case are those not reached by this motion, and relate to all plaintiffs and the period Dec. 7, 1941, to Nov. 14, 1939, the terminal point of the six year statute of limitations.

Appendix I
Territory of Hawaii
Office of the Military Governor
Fort Shafter, T. H.

General Orders }
No. 38 } 20 December 1941

The following policy governing the employment and use of labor in the Territory of Hawaii is announced for the information and guidance of all concerned:

1. All wage rates to be frozen as of December 7, 1941, for all employees on the Island of Oahu, so long as they remain in the same classification.

2. All employees of Federal Government and its contractors now actively deriving support from Federal funds, to be frozen to their respective employer as of December 7, 1941. This is to include the City and County of Honolulu, Territorial agencies, their contractors and subcontractors and utilities and sources of supply controlled by the Army and Navy. All the above workers who have separated from their employment since December 7, 1941, are to return to the job held as of that date.

3. Army and Navy will continue their established agencies for recruiting directly the workers required for their respective activities.

4. The normal working day shall be 8 hours, and all hours worked in excess of 8 hours will be paid at the rate of 1½ times the regular rate.

5. Terms of labor contracts between individuals and contractors, and other agencies of the Federal Government, which restrict or specify the nature of work to be performed are hereby suspended.

6. Men employed hereafter must report to the job for which they are ordered by the Military Governor.

By order of the Military Governor:

(Signed) Thomas H. Green
Thomas H. Green
Lt. Col., J.A.G.D.,
Executive

Appendix II
Territory of Hawaii
Office of the Military Governor
Fort Shafter, T. H.
7 December 1941

General Orders }
No. 4. }

By virtue of the power vested in me as Military Governor, the following policy governing the trial of civilians by Military Commission and Provost Courts is announced for the information and guidance of all concerned:

1. Military commissions and provost courts shall have power to try and determine any case involving an offense committed against the laws of the United States, the laws of the Territory of Hawaii or the rules, regulations, orders or policies of the military authorities. The jurisdiction thus given does not include the right to try commissioned and enlisted personnel of the United States Army and Navy. Such persons shall be turned over to their respective services for disposition.

2. Military commissions and provost courts will adjudge sentences commensurate with the offense committed. Ordinarily, the sentence will not exceed the limit of punishment prescribed for similar offenses by the laws of the United States or the Territory of Hawaii. However, the courts may adjudge an appropriate sentence.

3. The record of trial in cases before military commissions will be substantially similar to that required in a special court-martial. The record of trial in cases before provost courts will be substantially similar to that in the case of a Summary Court-Martial.

4. The procedure in trials before military commissions and provost courts will follow, so far as it is applicable, the procedure required for Special and Summary Courts-Martial respectively.

5. The records of trial in all cases will be forwarded to the Department Judge Advocate. The sentences adjudged by provost courts shall become effective immediately. The sentence adjudged by a military commission shall not become effective until it shall have been approved by the Military Governor.

6. All charges against civilian prisoners shall be preferred by the Department Provost Marshall or one of his assistants.

7. The Provost Marshall is responsible for the prompt trial of all civilian prisoners and for carrying out the sentence adjudged by the court.

8. Charges involving all major offenses shall be referred to a military commission for trial. Other cases of lessor degree shall be referred to provost courts. The maximum punishment which a provost court may adjudge is confinement for a period of five years, and a fine of not to exceed $5,000. Military commissions may adjudge punishment commensurate with the offense committed and may adjudge the death penalty in appropriate cases.

9. In adjudging sentences, provost courts and military commissions will be guided by, but not limited to the penalties authorized by the courts-martial manual, the laws of the United States, the Territory of Hawaii, the District of Columbia, and the customs of laws in like cases.

By order of the Military Governor:

(Signed) Thomas H. Green
Thomas H. Green
Lt. Col., J.A.G.D.
Executive Officer.

Appendix III
Territory of Hawaii
Office of the Military Governor
Iolani Palace
Honolulu, T. H.
31 March 1942

General Orders⎱
No. 91 ⎰

Labor.—1. General Orders No. 38, Office of the Military Governor, 20 December 1941, is revoked as of 31 March 1942.

2. The following policy, effective 1 April 1942, governing wages, hours of work, overtime, the employment and use of labor in the Territory of Hawaii, is announced for the information and guidance of all concerned. Nothing herein shall be construed as superseding or in conflict with the provisions of the Fair Labor Standards Act of 1938, or the Walsh Healey Public Contracts Act.

a. Wages.—(1) Revised Wage Schedule No. 9, U. S. Navy Contractors, Pacific Naval Air Bases, effective 1 December 1941, is hereby designated as the standard wage scale for workers engaged in work for Army and Navy agencies, their contractors and subcontractors. No person seeking employment with the above mentioned employers shall be employed at a rate less than or in excess of the standard rate for the job as listed in Revised Wage Schedule No. 9, and as same may be revised from time to time, as approved by the Military Governor.

(2) The above provision, relative to wages, shall not apply to Federal or Territorial, and City and County of Honolulu Civil Service employees.

b. Hours of Work and Overtime.—(1) Normal work-week on war projects in the Territory of Hawaii shall be six (6) days of eight (8) hours each.

(2) Overtime at the rate of one and one-half the regular rate will be paid for overtime in excess of forty-four (44) hours, or in excess of eight (8) hours in any one day. The maximum hours worked in any seven (7) consecutive days shall not exceed fifty-six (56), except in cases of emergencies and with the approval of the Chief of Military or Naval Service concerned.

(3) Work shall be so scheduled that all workers will receive one (1) day off in seven (7). This day is to be in lieu of Sunday and Sunday work per se shall not be considered overtime, and no overtime shall be paid for Sunday except when it is worked consecutively in excess of six (6) days. It is the intent of this provision to make it possible for work on war projects to be carried on seven (7) days per week, and at the same time provide that all war workers shall have one (1) day of rest out of seven (7) for the purpose of recreation and to attend to personal business.

(4) The provisions relative to hours of work and overtime shall not apply to: (a) Federal, Territorial or City and County of Honolulu civil service employees; (b) Employees of employers mentioned in paragraph 2a above, who are in a supervisory capacity on a monthly salary basis.

(5) The provisions of any contract with individual employees, labor unions, etc., in conflict with the provisions of this order are hereby suspended.

c. Employment.—(1) No Army or Navy agencies, their contractors or subcontractors, Federal agencies, Territorial agencies, City and County of Honolulu agencies, their contractors or subcontractors, hospitals, public utilities, stevedoring companies and sources of supply controlled by the Army and/or the Navy, shall employ or offer to employ, any individual formerly or now in the employment of the above mentioned employers unless and until such individual shall have presented to the employing agency a bona fide release without prejudice, in writing, from his last previous employer.

(2) Any individual who is or has been employed by any employer, as above described, who presents himself to any other such agency and secures or attempts to secure employment without having a bona fide release without prejudice from his last previous employer, or in any way misrepresents his employment status with regard to such release, shall, upon conviction, be fined not more than Two Hundred Dollars ($200.00) or be imprisoned for not more than two (2) months, or both.

d. Use of Labor.—(1) Terms of labor contracts between individuals and agencies of the Army and Navy, their contractors and subcontractors, which restrict or specify the nature of work to be performed, are hereby suspended.

(2) Persons employed now or hereafter employed by employers mentioned in paragraph 2c(1) must report, within a reasonable time thereafter, to the job to which they are ordered by their employer.

(3) Any individual now or hereafter employed by employers mentioned in paragraph 2c (1) who fails to report, within a reasonable time thereafter, to the job to which he is ordered by his employer, shall, upon conviction, be fined not more than Two Hundred Dollars ($200.00) or be imprisoned for not more than two (2) months, or both.

3. Appeal Agency.—a. Persons discharged with prejudice from employment with employers mentioned in paragraph 2c (1) may appeal their cases to the Appeal Agency, Office of the Director of Labor Control, for decision as to whether or not they may be allowed to continue work with another employer.

b. The Chief Administrator, Office of the Director of Labor Control, is hereby designated as the Appeal Agency for persons discharged with prejudice by employers mentioned in paragraph 2c (1). Any complainant not satisfied with the decision of the Appeal Agency may further appeal

his case to the Advisory Council to the Director of Labor Control.

By order of the Military Governor:

(Signed) Thomas H. Green
Thomas H. Green
Colonel, J.A.G.D.
Executive