**EMPIRE INDUSTRIES, Inc.**

v.

**MASTIC TILE CORP. OF AMERICA.**

United States District Court,
S. D. New York.
April 14, 1954.

Greenbaum, Wolff & Ernst, New York City, for plaintiff, Cassrell Greenberg, Maurice C. Greenbaum, Richard M. Ader, New York City, of counsel.

Daniel J. Riesner, New York City, for defendant, Julian Jawitz, Richard I. Donner, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

The motion for summary judgment is denied. The action is brought by the plaintiff, a Michigan corporation, to recover damages from the defendant, a New York corporation, allegedly sustained by the plaintiff during the period it acted as a distributor of defendant's products.

The complaint urges five causes of action. The details of those causes of ac-

tion are unnecessary for the purposes of this motion. Defendant's motion for summary judgment is based upon a document which it claims to be a general release (Exhibit B attached to the defendant's moving papers). Plaintiff's opposition to the motion is based on the contentions that the instrument asserted as a general release was a mere receipt for payment; that the alleged release was obtained by duress; and that in any event it was delivered conditionally.

The Court's discretion in granting a motion for summary judgment is severely limited in this Circuit. What is clear is that the Court may not adjudicate the truth after a reading of opposing affidavits. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 471.

The cases in this Circuit are legion for the principle that if there is an issue as to any material fact the motion for summary judgment must be denied. Bridgeport Brass Co. v. Bostwick Laboratories, Inc., 2 Cir., 1950, 181 F.2d 315; Colby v. Klune, 2 Cir., 1949, 178 F.2d 872.

Judge Charles E. Clark's able discussion in 14 Ohio State Law Journal 241 (1953) in an article entitled "Clarifying Amendments to the Federal Rules", points out the limitations in the application of the summary judgment rule. He states on page 249:

"As a last example I shall refer to the well known difference in approach to the summary judgment, where some courts have cut it down in substance to the field of operation of the old demurrer by substituting for the actual rule the devastating gloss that if there is 'the slightest doubt' as to the facts, the summary judgment must be denied." [1]

1. Judge Clark compiles the cases in the various Circuits, among them being the following in the Second Circuit: Doehler Metal Furniture Co. v. United States, 1945, 149 F.2d 130 and Arnstein v.

Porter, supra. It is appropriate to quote some portions of Judge Frank's Opinion in the Doehler case, 149 F.2d at page 135.

"We take this occasion to suggest that trial judges should exercise great care in

With this background we now approach the application of the principles of law to the case before us. I need not discuss all of the plaintiff's grounds for opposition to the granting of the motion for summary judgment, for I believe that the motion for summary judgment must be denied on the assertion of the facts which the plaintiff contends constitute duress. In so stating I do not intend to give the impression that I agree with the plaintiff's version of the facts, for if this Court were free to adjudicate the issues presented by the affidavits, I would favor the defendant's version of the facts. However, I have already indicated that if the affidavits raise an issue of fact, which appears material, the ultimate determination as to which side is telling the truth will have to be left to the trial.

In any event the plaintiff claims that Exhibit B was signed by Ben Goldberg, as president of the plaintiff corporation, with this backdrop of facts: that on or about February 15, 1952, the defendant and plaintiff had agreed, among other things, that defendant was to take back the balance of the Matico stock, and the sample display stands for full credit, and that plaintiff's distributorship was to end. Plaintiff says that the defendant, pursuant to this understanding, gave plaintiff orders to ship out part of the stock, to wit, merchandise valued at $5,-386.72, which the plaintiff did, and defendant failed to pay plaintiff therefor. The plaintiff urges further that it had a balance of merchandise of approximately $12,000 which the defendant failed to take back; that on February 28, 1952, a fire completely destroyed plaintiff's merchandise of a value of about $235,000 in one warehouse building; that in another building and in undamaged condition was merchandise of a value of about $12,000 which the defendant had previously agreed to take back; that up to this point the plaintiff had not been paid by the defendant the sum of $5,-386.72 for the merchandise already returned to the defendant and the defendant refused to take back the undamaged merchandise, improperly claiming that it was damaged. The crux of plaintiff's charge of duress is grounded on the assertion that all of its assets were tied up in a fire insurance adjustment claim and that defendant's undamaged merchandise was, because of defendant's unfair attitude, of doubted "virtue". Plaintiff urges that it could do no business because its merchandise had been destroyed, an adjustment had not yet been made by the insurance company, and it was unknown when such an adjustment would take place, and that plaintiff was faced with the possibility of a long period of delay without any funds. In addition, plaintiff asserts that the defendant had already agreed to pay $17,000 to the plaintiff for merchandise returned and to be returned. Hence, in effect, plaintiff states that it was in a desperate situation, that defendant was well aware of this fact, and that defendant took advantage of its dominant position to coerce plaintiff by oppressive business measures to accept the payment which it offered upon condition that the plaintiff would execute the alleged general release. The plaintiff urges that the defendant did this with knowledge that plaintiff was asserting claims (a) for breach of contract; (b) for carload commissions and (c) for defendant's breach of its agreement to take back another $12,000 in merchandise.

The defendant urges with some persuasiveness that even if the Court accepts plaintiff's version of the facts, under Michigan law the Court is compelled to grant summary judgment. But the law is not so clear that it can be applied in this case without a determination first of the truth of the particular facts

granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable * * *."

**388**

and circumstances. See Arnstein v. Porter, supra; Doehler Metal Furniture Co. v. United States, supra; Doyle v. Milton, D.C.S.D.N.Y.1947, 73 F.Supp. 281, 284; Murphy v. Bankers Commercial Corp., D.C.S.D.N.Y.1953, 111 F. Supp. 608, and cf. Downey v. Palmer, 2 Cir., 1940, 114 F.2d 116.

Nothing would be served by a further discussion of other facts. The assertion by the defendant that the plaintiff had certified the check in the sum of $5,016.-36, dated April 9, 1952, and had placed its endorsement on the back, after the words "Accepted in full payment for all merchandise and any and all claims of any kind * * *" is met with the same charges that it was all part of one transaction which had been tainted by duress and oppressive conduct on the part of the defendant.

In the light of the law as it has been clearly laid down in this Circuit, I am compelled to the conclusion that the defendant's motion for summary judgment must be denied. So ordered.